## Anthony A. C. Rogers

### *v.*

## Charles Gallagher.

1.  Bills of exchange—*discounted by acceptor before maturity—does not lose its negotiability—and if re-issued—endorsers are liable.* The principle is well settled, that a bill of exchange, discounted by the acceptor before maturity, does not lose its negotiability, and if re-issued by the acceptor, before it falls due, to a stranger who takes it in good faith, and for a valuable consideration, the parties whose names appear on the bill as endorsers, are liable to the holder, the same as if it had not passed through the hands of the acceptor.

2.  Same—*what considered a sufficient consideration for the transfer by the acceptor.* And in such case, where the party to whom the bill is re-issued, takes the same on account of indebtedness of the acceptor to him, such indebtedness constitutes a sufficient consideration to support the transfer.

Appeal from the Superior Court of Chicago.

The opinion states the case.

Messrs. Rogers & Garnett, for the appellant.

Messrs. Scammon, McCagg & Fuller, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of assumpsit, against appellant, impleaded with Bradford, upon a bill of exchange, dated at Pine Bluffs, Arkansas, April 3d, 1861, drawn by F. Brower and directed to Stewart & James, New Orleans, Louisiana, whereby they were requested to pay to the order of Rogers & Bradford $783.60. It was endorsed by the payee, and sent by him to the drawees, to be received and applied upon indebtedness of Rogers & Bradford to the drawer. The bill was received and applied as a credit upon the indebtedness, the credit bearing

date on the 11th April, 1861, and was for the sum of $697.10, being the amount of the bill, less a discount of twelve per cent. for the time it had to run before it matured. Appellant being in New Orleans on the 10th of May, 1861, settled with Stewart & James, and gave his notes for the balance due them after deducting the credit for the bill and other payments, which notes, after deducting payments, were taken up and new ones given on the 12th of April, 1862, all of which were paid by the 1st of May, 1866.

It appears that Stewart & James, upon whom the bill was drawn, and to whom it was sent to be applied on the indebtedness to them by Rogers & Bradford, before it fell due and after it was thus sent to them, re-issued it, and delivered it as collateral security to appellee, to whom Stewart & James were indebted. When it matured it was presented and protested for non-payment, and this suit was brought against appellant and Bradford, on their endorsement, to recover the amount of the bill, appellant only being served with process. A trial was had and judgment was rendered against him. To reverse that judgment the cause is brought to this court by appeal, and various errors assigned on the record, but they resolve themselves into one, and that questions the correctness of the judgment on the facts before the court below on the trial.

It is urged, that when the bill was presented to the drawees and taken up by them, it was paid, and lost all vitality, the payees being discharged as endorsers; and that the acceptors, by re-issuing it, might render themselves liable for its redemption, but could not revive the liability of the payees on their endorsement. On the other hand, it is insisted, that, as appellees took the bill before its maturity, although received from the payees, they are *bona fide* holders, and have a right to recover precisely as though it had never been taken up by the acceptors, and had come from the payees or from another endorser; that when Stewart & James took the paper up, they did so as purchasers, and not with the intention of paying it,

but simply discounted it and held it as would any other purchaser, and hence, might negotiate it at any time before maturity, so as to hold the other parties to the bill as well as themselves,

In Story on Bills, sec. 410, it is laid down as a rule, that it is the duty of the acceptor to pay the bill, and by his due payment thereof he discharges all other parties thereto from liability on the bill, either as drawers, endorsers or guarantors, if the payment is rightfully made by him to the holder, without any knowledge of any infirmity in the title of the latter, and, if the names of the parties on the bill through whom the holder derives his title are genuine, and not founded on forgeries. It is said, in Chitty on Bills, 223, (11th Am. Ed.): "But when a bill has been once paid by the *acceptor*, it is *functus officio* at common law; * * and a bill or note can not be negotiated after it has been once paid, if such negotiation would make any of the parties liable who would otherwise be discharged, nor can it be negotiated so as to charge even the endorsers."

In this case, the bill was taken up by the parties who were to pay it, by its terms, and there can be no pretense that the drawees, who were acceptors, could have sued the endorsers for non-payment. Had the acceptors protested it for non-payment and sued the endorsers, no one could have for a moment supposed that they could have recovered. There could be no pretense for such a right. But where the bill was again put in circulation by the acceptor, did innocent holders acquire such a right? Did the taking up the bill, as it was done by the acceptors before maturity, and at a discount, destroy its negotiability before maturity? Was it payment?

It is said, in Story on Bills, sec. 223, that, " Where a bill has once been paid by the acceptor, after it becomes due, (although not if paid before due and the fact be unknown to the holder,) it loses all its vitality and can no longer be negotiated. So, if it be dishonored by the acceptor, and is taken

up by the drawer, he can not negotiate it so as to charge the
endorsers, although he might so as to charge himself or the
acceptor, if the latter be liable to him." Again, at sec. 417,
he says, "In order to make a payment by acceptor good and
binding upon all other parties to the bill, it should be made at
maturity of the bill, and not before; for, although, as between
the real *bona fide* holder and the acceptor, the payment, when-
ever made, and however made, will be a conclusive discharge
from the obligation of the bill; yet, as to third persons, it
may be far otherwise; for payment means payment in due
course and not by anticipation. If, therefore, the acceptor
should pay a bill of exchange, before it is due, to any holder,
who should afterwards, and before its maturity, endorse or pass
the same to any subsequent *bona fide* endorsee or other holder,
the latter would still be entitled to full payment thereof from
the acceptor, at its maturity; for payment of the bill before
it is due, is no extinguishment of the debt, as to such per-
sons."

In Bayley on Bills, 91, (Am. from the 4th Lond. Ed.), it is
said, "If a bill or note be paid before it is due, and nothing
be done upon it to mark such payment, an endorsement after-
wards, before the time it would have become due, will give
the endorsee, if he take it *bona fide*, and for a valuable con-
sideration, the same right as if there had been no such
payment."

The same rule is announced in the cases of *Morley* v. *Cul-
verwell*, 7 Mees. & Welsb. 174; *Altenborough* v. *Mackenzie*,
36 Law and Eq. R. 562; *Swope* v. *Ross*, 40 Penn. St. 193;
*Eckert* v. *Cameron*, 43 Penn. St. 120. From these cases it
would seem that the weight of authority is, that if the note
is only discounted before maturity, the bill does not lose its
negotiability, but may be again put in circulation, and parties
whose names appear on it, bound as though it had not passed
through the acceptor's hands. There are other cases which
seem to oppose this rule, but the weight of authority is against

24—49TH ILL.

them.   If, however, it were actually paid, and so understood and intended by the parties, the rule might be otherwise.   In this case, the bill seems to have been only discounted, and not paid.   Nor does it appear that appellee had any notice of the transaction, and, for aught that appears, he took the bill in good faith.   The indebtedness of Stuart & James to appellee was, as has been repeatedly held by this court, a sufficient consideration to support the transfer and to render the bill negotiable, and hence, the defense of appellant is cut off by the transfer of the bill.

The judgment of the court below must be affirmed.

*Judgment affirmed.*