WEST BOSTON SAVINGS BANK *vs.* ROBERT M. THOMPSON.

Suffolk.    Nov. 22, 1877. — March 9 ; June 28, 1878.    COLT & LORD, JJ., absent.

In an action by a savings bank on a promissory note, against B. as second indorser, it appeared that the note, which purported on its face to be secured by a mortgage of real estate, was payable to A. or order; that A. borrowed money of B., indorsed the note to B.'s order, and delivered it to him with an assignment of the mortgage and note, as collateral security ; that afterwards A. paid B. the money borrowed, and B. wrote his name on the back of the note under the name of A. and delivered it to him, and also executed to him an assignment of the mortgage and note; that A. thereupon, and before the maturity of the note, delivered it to the plaintiff for a valuable consideration, and executed to it an assignment, in which A. was described as mortgagee named in, and assignee of, the mortgage ;' that A. was then a trustee of the plaintiff bank and one of its conveyancers, but took no part in the management; that the treasurer of the bank did not notice the signature of B. when he took the note, and relied on the mortgage alone as security.    B. testified that he did not intend to indorse the note, but only to assign it to A.    Demand was made on the maker of the note and due notice given to B. *Held,* that, on these facts, the action might be maintained; and that no fact appeared which would warrant a jury in finding for the defendant.

CONTRACT against the defendant as second indorser of a promissory note for $2500, dated July 21, 1874, signed by Abel. S. Hussey, and payable to Leonard A. Jones or order in two years from date, and having on its face a memorandum that it was secured by a mortgage of real estate in Boston.   On the back of the note were the following :

"Pay Robert M. Thompson or order.   Leonard A. Jones."

"Robert M. Thompson."

"July 6, 1876.    I hereby waive demand and notice on the within note.   Leonard A. Jones."

The answer denied that the defendant indorsed the note to the plaintiff ; and alleged that said Jones indorsed the note and assigned it, together with the mortgage, to the defendant as collateral security for a loan of money, by a deed of assignment,

dated July 24, 1874; that afterwards Jones paid to the defendant the amount of the loan, and directed him to assign the note and mortgage to John Pickering and Charles U. Mosely; that thereupon the defendant wrote his name on the back of the note and executed a deed of assignment, dated October 9, 1874, and delivered the note and deed to Jones to be delivered to Pickering and Mosely as an assignment of the note and mortgage; that the defendant did not indorse the note, either as an accommodation indorser or otherwise, and did not authorize Jones to represent that the defendant had indorsed the note; that the defendant received no consideration for indorsing the note; that afterwards Jones paid to Pickering and Mosely the amount due them, and thereupon Pickering and Mosely assigned the note and mortgage to Jones by a deed of assignment, dated November 10, 1874; that afterwards Jones assigned the note and mortgage to the plaintiff by a deed of assignment, dated November 10, 1874; that the plaintiff had notice of the foregoing facts; that the plaintiff bought the note and mortgage, not knowing that the defendant's name was written upon the back of the note, and not relying upon an indorsement of the defendant in any way as security for the payment of the note, and not giving any consideration for an indorsement of the defendant. Annexed to the answer were copies of the assignments, which were in the usual form of assignments of mortgages, each purporting to assign "the mortgage deed, the real estate thereby conveyed, and the note and claim thereby secured." In the assignment to the plaintiff, Jones was described as "the mortgagee named in, and assignee of, a certain mortgage," &c.

At the trial in the Superior Court, *Putnam*, J., ordered a verdict for the plaintiff; and reported the case for the consideration of this court. The report, after stating the pleadings as above, proceeded as follows:

The plaintiff produced the note, the execution of which by Hussey, the signature of the defendant on the back of the note, and the fact of due protest and notice, were admitted, and rested his case.

The defendant, in opening his case, stated the following propositions, upon which he asked the ruling of the court: "1. That if the jury found that the indorsement of the defendant was

without consideration, and was circulated without right or authority from him, the burden would be on the plaintiff to show that it was a *bonâ fide* holder for value, that it took the note without notice of the defendant's equities, and in the usual course of business; and that, to rebut such claim on the part of the plaintiff, the defendant would rely upon evidence of the negligence of the bank in employing Jones as its solicitor in the transactions by which the bank gained title; and also upon the notice to the bank from the knowledge of Jones, who, it was contended, acted as solicitor for the bank in this transaction. 2. That the legal effect of the indorser taking up a note which has once been in circulation is to strike out all indorsements on the note subsequent to his; and that if the plaintiff took the note with notice that it had been in circulation, and had been taken up by Jones, who, as to the defendant, was a prior indorser on the note, it could not recover against the defendant. 3. That the burden was on the plaintiff to show that it gave value for the defendant's indorsement, and how much, and that if the jury found that the indorsement was without consideration, and was circulated without right or authority from the defendant, the plaintiff could only recover the amount actually advanced by it on the credit of such indorsement. 4. That if it was out of the usual course of business for the bank to invest its deposits in indorsements, and if the jury found that the indorsement was without consideration, and was circulated without right or authority from the defendant, the plaintiff could not recover."

The defendant, against the plaintiff's objection, put in the several assignments referred to in his answer.

Leonard A. Jones testified, against the plaintiff's objection, as follows: " I am a conveyancer, and was, at the time of these transactions, connected with the plaintiff bank; was one of the trustees of the bank, and looked up most of its titles for it, but not all. I sold a house to Hussey, and received in payment part cash and the note in suit, secured by a mortgage on the house. The defendant lent me $2000, and I assigned this note and mortgage to him as collateral security. Two or three months afterwards he wanted his money, and I asked him to assign the note and mortgage to Pickering and Mosely, which he did. He gave me up the note and mortgage, and I paid him all of my debt

I did not notice at the time how the note was indorsed. I borrowed only part of the money from Pickering and Mosely, and the assignment of the note and mortgage to them was as collateral security. Afterwards I applied to the plaintiff bank to take the mortgage, and the treasurer went and looked at the house and decided to take the mortgage. While negotiating with the bank, I do not remember that anything was said about indorsers. I do not think that the bank knew that the note was indorsed. Pickering and Mosely retained the note in their possession until I took it and delivered it to the bank. The bank, as a fact, did not rely upon indorsers, and did not, at this time, protest any of its mortgage notes. We all supposed that the mortgage was a perfectly good security, and the loan was made on its security. I wrote and signed the waiver of demand and notice on the note, long after it was transferred to the bank, and just before the note became due."

On cross-examination, he testified as follows: "I never took part in managing the business of the bank. I never was on the investment committee of the bank, and never had anything whatever to do with the investment of its funds. There were twenty-five or thirty trustees in all, of whom I was one. In the summer of 1874 I had no salary and no regular employment from the bank. Mr. Sanger was sometimes employed as conveyancer by the bank, and sometimes I was. I received value from the bank for the full amount of the note and interest. I received $500 cash, and took up a note of mine, with two sureties, for $2000. I asked the treasurer to have Mr. Sanger look at this title; but he said no, if they could not rely on me in this matter, they could not in others. The bank always attends to recording the papers. I did not ask the defendant to indorse the note, either as an accommodation indorser or otherwise." Against the objection of the defendant the witness further testified: "I asked that Mr. Sanger should look at the title, because I considered myself acting as a party, and not as attorney for the bank. I think I left the assignment from Pickering and Mosely to me, and my assignment to the bank, for record, and gave the mortgage and note to the bank. Whenever I looked up titles, the borrower paid my bill out of his loan; I never received any fees directly from the bank."

The defendant testified, against the plaintiff's objection, as follows: "I lent Jones some money, and took an assignment of this note and mortgage as collateral security; afterwards Jones paid me the amount of the loan, and I executed an assignment of the note and mortgage to Pickering and Mosely; Jones did not ask me to indorse the note, either as an accommodation indorser or otherwise, and I did not intend to indorse it. I did not know Pickering and Mosely in the transaction at all, but signed the papers, intending to execute an assignment, and delivered them to Jones for that purpose only. The first I heard of the note was some time in the early summer of 1876, when the treasurer of the bank told me that the bank had a note indorsed by me. I told him he was mistaken, as I had not indorsed any note. I called at the bank, and he showed me the note and mortgage; I thought at first that it was not my signature, but finally concluded that it was. I do not think that Jones's second indorsement was on the note when it was shown to me at this time."

The defendant asked the judge to rule that the plaintiff could not recover on its declaration, there being a variance between it and the proof, which showed that the bank took its title to the note by an assignment from Jones, and not by an indorsement from the defendant; but the judge refused so to rule, and the defendant excepted.

The defendant here rested his case, and the judge, at the request of the plaintiff, ruled that there was no evidence to be submitted to the jury which would warrant a finding for the defendant, and directed a verdict for the plaintiff.

If the above ruling was correct, judgment was to be entered for the plaintiff on the verdict; otherwise, the case to stand for trial.

*R. D. Smith & R. M. Thompson*, for the defendant. 1. The evidence would not warrant the jury in finding that the plaintiff was an indorsee of the note. When a note is indorsed in blank and delivered with the intention of passing the title thereto to a person, who, with a like intention delivers it to another, the transaction may be pleaded as an indorsement from the person indorsing in blank, to the holder; but, to constitute such an indorsement, it is essential that there should be, in each trans-

fer, a delivery to the transferee as indorsee. *Adams* v. *Jones*, 12 A. & E. 455, 459. *Bromage* v. *Lloyd*, 1 Exch. 32. *Marston* v. *Allen*, 8 M. & W. 494. *Robinson* v. *Little*, 18 L. J. (N. S.) Q. B. 29. *Bell* v. *Ingestre*, 12 Q. B. 317. In the case at bar, the evidence only showed that the note was assigned by deed to the plaintiff; that, at the time of the assignment, nothing was said about the note being indorsed; that the note was purchased solely on the security of the mortgage; that the plaintiff did not know that the defendant's name was on the note; and that the deed of assignment was left for record before the note was delivered to the plaintiff.

As there was no evidence in the case as to the issuing of the indorsement in favor of the plaintiff, except the presumption arising from its possession of the note, and as this possession was explained and the fact of indorsement negatived by clear and uncontradicted evidence, the defendant was entitled to the ruling asked for, namely, that there was a variance between the declaration and the proof.

2. The evidence in the case would warrant the jury in finding for the defendant. The answer set up that the defendant's name was written on the note at the same time with the execution of a deed of assignment of the note and mortgage; that the intention of the parties was that the whole transaction should constitute an assignment only, and that the papers were delivered to Jones to deliver to Pickering and Moseley as an assignment. If therefore the note was circulated as one indorsed by the defendant, it was without right or authority from him, and in legal effect a fraud. The burden of proof was then on the plaintiff to show either that the defendant actually indorsed the note, which includes the proof that there was no fraud; or that the plaintiff was a *bonâ fide* indorsee of the note, and of the defendant's indorsement, for value, in the usual course of its business, and without notice of the alleged fraud.

At the trial, the plaintiff made out a *primâ facie* case on the issue that the defendant indorsed the note. But it was open to the defendant in rebuttal to show that he never delivered the note as one indorsed by him, and such proof would · constitute a good defence. *Bell* v. *Ingestre*, and *Marston* v. *Allen, ubi supra* This defence was established by uncontradicted evidence.

3. On every proposition contained in the second issue, there was affirmative evidence which would warrant a finding for the defendant. The plaintiff had notice that the note had been in circulation and had been taken up by Jones, a prior indorser, after the defendant's indorsement was made.

This notice was given by the deed of assignment from Jones to the bank, in which Jones is described as "assignee of, and mortgagee named in," the mortgage given to secure this note. And the bank had also notice of everything appearing on the note itself. *Angle* v. *Northwestern Ins. Co.* 92 U. S. 330. *Strong* v. *Jackson*, 123 Mass. 60. It therefore had notice that the defendant's indorsement was subsequent to the assignment from Jones and previous to the reassignment to him.

Notice of this fact defeats the plaintiff's action; because the assignment of the note, and of the contracts evidenced thereby, to Jones, operated as a release of his contract; and a release given to a principal discharges the surety, and a prior indorser is, as to a subsequent indorser, a principal, and the subsequent indorser a surety. And although a *bonâ fide* indorsee of a note, paid or released, and afterwards transferred before maturity, may recover if he is without notice of the payment or release, he cannot recover if he has notice. *Burbridge* v. *Manners*, 3 Camp. 193. *Morley* v. *Culverwell*, 7 M. & W. 174. *Dod* v. *Edwards*, 2 Car. & P. 602. *White* v. *Kibling*, 11 Johns. 128. *Gordon* v. *Wansey*, 21 Cal. 77. *Long* v. *Bank of Cynthiana*, 1 Littell, 290. *Beebe* v. *Real Estate Bank*, 4 Ark. 546.

The plaintiff did not give value for the contract sued upon; namely, the defendant's indorsement. The evidence was, that the plaintiff advanced its money on the security of the mortgage, not knowing that the defendant's name was on the note. It may be argued for the plaintiff, that a person purchasing a note gets everything that is on it; and undoubtedly an indorsement assigns all the contracts which a note actually evidences; but when there is no contract, none can be assigned; *nemo dat qui non habet*. In fact, in such a case, the holder does not recover strictly on a contract; for, when a plaintiff recovers on the ground that he is a *bonâ fide* indorsee, &c., it must first appear that no contract exists, and that the plaintiff has been injured by relying on what appeared to be the evidence of a contract on

the part of the defendant, which had got into the market through his negligence, and the true ground of the recovery is, that the plaintiff has been injured through the negligence of the defend ant, and, to prevent multiplicity of actions and to favor mercantile transactions, he is allowed to recover in the original action the damages occasioned by the defendant's negligence. And he recovers, not the amount of the note, but only the amount he actually advanced, with legal interest, namely, the actual damages. *Jones* v. *Hibbert*, 2 Stark. 304. *Todd* v. *Shelbourne*, 8 Hun, 510. *Stoddard* v. *Kimball*, 6 Cush. 469. *Hubbard* v. *Chapin*, 2 Allen, 328. And he cannot recover at all, if the defendant has not been negligent. *Foster* v. *Mackinnon*, L. R. 4 C. P. 704. *Gibbs* v. *Linabury*, 22 Mich. 479. *Burson* v. *Huntington*, 21 Mich. 415. So if the defendant's negligence is not the proximate cause of the damage. *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196. In this case, it is clear that the plaintiff was not in any way induced to part with its money by relying on the defendant's supposed indorsement, for the reason that the plaintiff did not know that the indorsement existed.

*M. Williams, Jr.*, for the plaintiff.

MORTON, J. This is an action upon a promissory note, brought against the defendant as second indorser.

The note is signed by one Hussey, dated July 31, 1874, and payable in two years to the order of Leonard A. Jones, and was secured by a mortgage of real estate. A few days after its date, Jones assigned the mortgage and indorsed the note to the defendant as security for a loan of money. In October, 1874, Jones repaid this loan, and the defendant, at his request, assigned the mortgage to Pickering and Mosely, at the same time indorsing the note in blank. In November, 1874, Jones borrowed of the plaintiff the amount of the note, procured an assignment of the mortgage from Pickering and Mosely to himself, and executed an assignment of the same to the plaintiff, at the same time delivering to it the note, indorsed by himself and by the defendant. It was not necessary for the defendant to indorse the note; but, as he saw fit to put it in circulation with his indorsement, he became liable on it to any one who took it in good faith and for value before its maturity. It will hardly be seri-

ously contended that his testimony that he "did not intend to indorse it" would affect the rights of a holder for value.

According to the undisputed testimony at the trial, the plaintiff took this note in the usual course of business, for its full value, before its maturity, and, by the familiar principles governing the circulation of negotiable paper, it is entitled to recover against all the parties to the note. The defendant contends that the plaintiff lent the money upon the security of the mortgaged land, and did not rely upon his indorsement. But, if this be the fact, it is immaterial. The indorsee had the right to look to all the parties on the note. The fact that it did not rely upon the defendant's name could not defeat this right or vary his liability under his contract.

The defendant also contends that, as the plaintiff knew of the relation which the defendant sustained to Jones in regard to this transaction, it cannot recover. We do not deem it necessary to decide whether there would be a defence if the bank knew all the facts, because there was no evidence which would justify the jury in finding such knowledge. The only evidence to show this was the fact that Jones was one of the trustees of the bank, and sometimes acted as its attorney. But, in this transaction, he was acting solely as a borrower. He was not in any sense, either as trustee or attorney, acting for the bank, and the bank was not affected with his knowledge of the equities, if any, which would furnish a defence upon the note. *National Security Bank* v. *Cushman*, 121 Mass. 490.

We are of opinion that the evidence at the trial would not have justified a verdict for the defendant, and that the court rightly ruled that the plaintiff was entitled to recover.

*Exceptions overruled.*

The defendant thereupon moved for a rehearing of the cause, and referred the court to *West St. Louis Savings Bank* v. *Shawnee County Bank*, 95 U. S. 557, and *Lemoine* v. *Bank of North America*, 3 Dillon, 44.

MORTON, J. After the foregoing opinion was written, the defendant filed a motion for a rehearing upon the point that, "as matter of law, when the indorser of a note, which has been in circulation, takes it up, all indorsements on the note subsequent

to his are cancelled, and he cannot afterwards negotiate the note so as to make the subsequent indorsers liable to any person with notice of the facts." This point, though not argued in the opinion, was fully considered by the court.

There was no evidence at the trial that the plaintiff had actual knowledge of the relation which the defendant sustained to Jones, or of the consideration which moved the defendant to indorse the note. The only constructive knowledge with which the plaintiff could be affected, by the note and the several assignments of the mortgage, would be knowledge of the facts, that Jones transferred the note and mortgage to the defendant, that the defendant transferred them to Pickering and Mosely, that Pickering and Mosely transferred them to Jones, who simultaneously transferred them to the plaintiff, and that this was all done before the maturity of the note and in the usual course of business.

The defendant contends that, when the note came the second time into the hands of Jones, the defendant, being a subsequent indorser, was released, and his liability could not be revived by a subsequent negotiation of the note. The rule undoubtedly is, that if the payee and first indorser of a note takes it up or pays it at its maturity, the subsequent indorser is discharged, and his liability cannot be revived by a subsequent negotiation of the note. But this rule does not apply to this case. The mere fact that a note, before its maturity, comes in the usual course of business into the hands of the payee after having been once negotiated by him, does not destroy its negotiability, nor defeat the right of a *bonâ fide* holder to recover against all who are parties to the note at the time it is negotiated to him.

*Motion for a rehearing denied.*