SIMON PERSKY, Appellant, *v.* BANK OF AMERICA NATIONAL ASSOCIATION, Respondent.

First Department, April 15, 1932.

*Samuel M. Chapin* of counsel [*Monroe Chapin* with him on the brief; *Blumberg & Parker*, attorneys], for the appellant.

*Joseph R. Jackson* of counsel [*Curtin & Glynn*, attorneys], for the respondent.

SHERMAN, J.   On June 14, 1926, Maria Di Francesco made a note at New Haven, Conn., whereby she promised to pay to the order of Alexander Capasso $50,000, payable in successive semi-annual payments of not less than $1,000 each, beginning with December 14, 1926, and continuing on the fourteenth day of June and of December in each year thereafter, for a period of eight years from its date, and the balance then due was made payable on demand, with interest at the rate of six per cent per annum, payable semi-annually, together with all taxes assessed upon said sum against the payee or the holder of the note.   It further provided that if any payment of interest or principal remained unpaid for fifteen days after it fell due, the principal of the note should immediately thereafter, at the option of the holder, become due and payable on demand.

As appears from the back of the note, Capasso on June 14, 1926, indorsed it to the order of the Italian Discount and Trust Company, and thereunder placed his indorsement in blank.   Thereafter the Italian Discount and Trust Company on November 30, 1926, indorsed the note to the order of Alexander Capasso, the payee.   Capasso subsequently indorsed it to the order of Simon Persky, trustee.   None of the preceding indorsements was without recourse.   Then follow an indorsement to the order of Harry Lowenthal by Simon Persky as trustee, and on July 10, 1929, an indorsement by Harry Lowenthal to the order of Simon Persky — both of which latter indorsements were without recourse.

This action is brought against defendant, the successor of the Italian Discount and Trust Company, to charge it with liability as an indorser, within the definition found in section 113 of the Negotiable Instruments Law.

Upon this motion for summary judgment under rules 113 and 114 of the Rules of Civil Practice, plaintiff showed that $46,000

is still due as principal of the note. He further states that the note was drawn simultaneously with a second mortgage on real estate at New Haven, which secured the note (though on the face of the note there is no reference to the mortgage), and that on December 31, 1926, he paid to Capasso $35,000 for the note, which then bore the indorsement of Capasso and of the Italian Discount and Trust Company, and that he made this purchase and took an assignment of the mortgage accompanying the note " on the faith and credit of and induced by the security of the indorsement of the Italian Discount & Trust Company." He avers that, though he took the note in the name of Simon Persky, trustee, there was no trust, and the purchase was for his individual account.

Plaintiff asserts that subsequently he sold the note and mortgage to Lowenthal for a valuable consideration, stated to be $40,000, and that he later repurchased it from Lowenthal for the same amount on or about July 10, 1929. The first mortgagee began a suit for foreclosure of his mortgage, in which judgment was entered on September 27, 1929, whereunder the property was sold and the second mortgage was rendered valueless.

A default in payment having occurred, plaintiff thereafter elected to call due the principal and interest then remaining unpaid on the note, and gave notice thereof to the maker of such election and also that the balance remaining unpaid upon the note would be due and payable on December 22, 1930; and accordingly on that day the note was presented to the maker, payment thereof demanded but refused, whereupon the note was protested for non-payment, of all of which due and timely notice was given to defendant, the Italian Discount and Trust Company having meanwhile been merged into defendant.

The answer contains denials of unimportant matters and also pleads as a separate defense that the note was secured by a mortgage, the terms of which modified the terms of the note, and that the mortgage and note had been assigned in June, 1926, by Capasso to the Italian Discount and Trust Company as collateral security for moneys due from Capasso to that company, which were later paid by Capasso, whereupon the note and mortgage were reindorsed and reassigned by that company to Capasso, and that plaintiff took the note and mortgage with full knowledge of the foregoing alleged facts.

Rule 113 requires defendant to show by affidavit or other proof such facts as may be deemed sufficient to entitle it to defend. The question is whether it has complied with that requirement.

The affidavits presented by defendant do not show that the terms of the note were modified by the mortgage, or that the plaintiff had

any knowledge beyond such as appears upon the face of the note itself and the indorsements. Accordingly the record presents no disputed question of fact. A question of law is, therefore, presented and we are called upon to determine whether the plaintiff is entitled to recover the balance due upon the note.

A strikingly similar situation involving a note secured by a mortgage was considered in *West Boston Savings Bank* v. *Thompson* (124 Mass. 506), where it was held that the payee and indorser of a note to whom it was afterwards transferred before maturity in the usual course of business, was entitled to negotiate it again, and that all parties to it at the time of such renegotiation would be liable to the holder, the opinion concluding (p. 515): " The mere fact that a note, before its maturity, comes in the usual course of business into the hands of the payee after having been once negotiated by him, does not destroy its negotiability, nor defeat the right of a *bona fide* holder to recover against all who are parties to the note at the time it is negotiated to him." This extract was quoted with approval in *State Finance Corporation* v. *Pistorino* (245 Mass. 402).

Well-reasoned authorities held that, even where a maker of a note had reacquired it and reissued it prior to maturity, a subsequent innocent holder for value before maturity can recover from all prior indorsers. (*Eckert* v. *Cameron*, 43 Penn. St. 120; *Rogers* v. *Gallagher*, 49 Ill. 182; *Horn* v. *Nicholas*, 139 Tenn. 453.) Some decisions to the contrary seem to have been based on the view that such reacquisition operated to discharge the instrument. Since the enactment of section 200 of the Negotiable Instruments Law, there can be no question that such discharge occurs when the principal debtor becomes the holder in his own right, at or after maturity. Capasso negotiated the note bearing the indorsement of the Italian Discount and Trust Company, and a *bona fide* purchaser before maturity is entitled to enforce the indorser's liability.

Respondent urges that inasmuch as Capasso, when he reacquired the note, had the right to strike out the indorsement of the Italian Discount and Trust Company, and could not himself have recovered against that corporation, as an indorser, the provisions of section 80 of the Negotiable Instruments Law forbid liability on its part to a subsequent *bona fide* holder who purchased the note before maturity. The language of that section, however, does not support respondent's position: " § 80. When prior party may negotiate instrument. Where an instrument is negotiated back to a prior party, such party may, subject to the provisions of this chapter, reissue and further negotiate the same. But he is not entitled to enforce payment thereof against any intervening party to whom he was personally liable."

This inhibition is leveled against the party who has reacquired the note and prevents him from enforcing payment against any intervening indorser to whom he was liable; while it would prevent Capasso from successfully suing defendant as indorser, it is of no avail as against plaintiff, a *bona fide* holder for value before maturity.

Under the law merchant and the Negotiable Instruments Law, a negotiable note is a circulating credit like the currency of the country, and any *bona fide* purchaser before maturity is entitled to enforce the liability of every indorser. Such right can, of course, be defeated by showing that the holder acquired the paper with knowledge of an infirmity, or that a discharge arose under sections 200 and 201 of the Negotiable Instruments Law. Here no infirmity or discharge has been shown.

The Italian Discount and Trust Company could have relieved itself from responsibility as an indorser by indorsing, without recourse, or, before delivering the instrument back to Capasso, by canceling its indorsement, or under section 78 of the Negotiable Instruments Law, Capasso might have relieved it of liability by striking out the indorsement of the Italian Discount and Trust Company. But it was not obligatory upon him to do so, and he did not do it.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and plaintiff's motion for judgment in his favor and against defendant granted, with ten dollars costs.

FINCH, P. J., MERRELL, McAVOY and TOWNLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.