## The State v. John M. Allen et al.

1. Principal and Surety. *Liability of surety. Secret condition.*

   A surety signing a bond cannot avail of a secret agreement with his principal limiting his liability; otherwise, if the condition and its violation were disclosed to the approving authority.

2. Same. *Bond. Release of surety. Effect on co-sureties.*

   Where a bond is signed by sureties, upon condition that it is to be circulated for other signatures, and not to be delivered or deemed complete until solvent co-sureties to a certain amount are obtained, and, these being secured, the signature of one of them is erased by the principal, and the condition and its violation are known to the approving authority before the bond is approved, the sureties who signed upon such condition, and who did not consent to such erasure, are thereby released.

3. Conditional Signing. *Surety; when released. Case.*

   A surety who signs a bond on condition that a certain solvent person will also sign, will be released, if, without his consent, after the bond is complete, but before its approval, such person is released by the act of the principal. The effect would be the same, whether such release of the co-surety was by the express act of the principal, or resulted by operation of law, from the principal's act in erasing the names of other sureties who had previously signed.

4. Conditional Suretyship. *Notice of condition; when implied.*

   Under such circumstances, the erasure of the surety's signature and of his name in the body of the bond, will, of itself, be notice to the approving authority of the condition and of its violation, since it suggests inquiry, which, if followed up, would lead to a knowledge of the facts.

From the circuit court of the first district of Hinds county. Judge J. B. Chrisman being disqualified, Hon. C. H. Campbell, judge of the fifth district, presided by consent.

This is an action by the state upon the bond of Hamilton, Allen & Hoskins, lessees of the state penitentiary. This cause has been twice before this court. See *Hamilton v. The*

*State,* 67 Miss., 217 ; *Hamilton* v. *The State,* not reported. The opinion of the court, read in connection with the previous report of the case, will sufficiently disclose the facts.

*T. M. Miller,* attorney-general, for the state.

It is true that the alteration of an executed instrument, whether in a manner prejudicial to sureties or not, releases them. In this case there was no executed instrument until delivery to, and approval by, the board of public works. If counsel for appellee be correct in his position that the bond, when signed by the sureties, was complete, the addition of a single name afterwards would be a material change, and would avoid the bond. The doctrine which underlies all the cases relied on by appellee, is, that when the surety intrusts the bond to his principal to fulfill the conditions before delivery, the principal becomes his agent, and, if fraud be committed, or any departure from secret instructions be made, the loss must fall upon the surety and not upon the beneficiary of the bond. Such would be the rule, even though names were forged by the principal. Murfree on Off. Bonds, § 761; 63 Mo., 212; 53 Me., 284; 21 Wall., 274; *Graves* v. *Tucker,* 10 Smed. & M., 9.

I admit, for argument, that if these defendants had signed upon condition that Hart should become bound, and then, after he signed, his name was erased, that would discharge them, because the face of the bond would give notice. But the fact here is that the bond was merely intrusted to the principals for further signatures, to the end that enough might be procured to make up the penalty. Hart's withdrawal, so far as the sureties are concerned, was no more and no less than if he had promised to become a surety and had failed to keep his promise. The appellants were not defrauded, as they had never heard of Hart. If the principals had delivered the bond with only the names appearing thereon ahead of Hart's, these sureties would have been bound. How, therefore, can it be said that they would not be bound, when

the bond was delivered that way, in effect? *Graves* v. *Tucker*, *supra.*

The reason for releasing subsequent signers in such cases, is, that they act upon the faith of previous signatures. They contract to become jointly liable with certain persons as cosureties. And, even if they intrust the bond to the principal, they presume that it will not be altered. Murfree, § 760. That is the doctrine as it stood prior to *State* v. *Craig*, 58 Iowa. It is the real doctrine stated in *Smith* v. *U. S.*, 2 Wall., 219; and in 21 Iowa, 244; and 43 *Ib.*, 508.

It is believed that *Craig* v. *The State* was the first case to hold that not only subsequent but prior signers of a bond intended for circulation were discharged by erasures before delivery. The case is not consistent in reason. The board of public works cannot be charged in this case with notice of any implied conditions. If it had made inquiry, and had learned that Hart's name was erased without the consent of the subsequent signers, and that the latter signed before the erasure, and that the erasures were made by the principal having the bond, the only conclusion would have been, that the instrument was not the deed of the subsequent signers, and the bond might, notwithstanding this, have been accepted. It could have learned nothing more, for the allegation in the plea that the sureties, as among themselves, signed only for the amount stated opposite their names is fanciful. No such understanding was or could be proved. There was nothing on the face of the bond to show that these defendants relied on others to become bound. *State* v. *Churchill*, 48 Ark., 426, relied on by appellees, is so extraordinary in its holding as to destroy its value as an authority; but, even in that case, it does not appear that the bond was drawn in blank, to be circulated for signatures. The erasure of Hart's name in this case occurred before delivery. The real plea, however, is that it occurred after delivery. The defense, therefore, is not sustained.

The essential principle contended for by the state here was

applied in *Railroad Co.* v. *Kitchin*, 91 N. C., 39.    Upon the
general principle claimed, see, also, 89 N. C., 6; 71 Ill., 20;
5 Ohio, 256; *Robert* v. *Halsey*, 11 Smed. & M., 140; 50 Me.,
36; 10 Ohio, 445; 21 Iowa, 244.

*John M. Allen*, for appellees.

The substance of the plea is, that the erasure of Hart's
name was either while the bond was in the hands of the
governor, as president of the board of public works, or in
the hands of the principal obligors.    This allegation is merely
to show that the erasure was made under circumstances that
would relieve Hart, and that it was not done by a stranger.
The only real controversy is as to whether the name was
erased after the bond was completed.    The special verdict
clearly settles the issues of fact in favor of the defendants.

No principle is better settled than that, where an instru-
ment is the obligation of a surety, and has been altered with-
out his consent, in a manner to augment his liability, he is
released, unless he has consented to or ratified the contract as
altered.    Murfree, § 760; Greenl., Ev., 564; *Smith* v. *U. S.*,
2 Wall., 219; *State* v. *Craig*, 58 Iowa, 238; *State* v. *Churchill*,
48 Ark., 426; *State* v. *McGonigle*, 101 Mo., 353; 2 Gray, 556;
24 How., 315; 7 Blackf., 61; 2 Penn. St., 54; 7 Mo., 572; 80
Ky., 388; 14 Bush, 604; 21 Iowa, 244; 2 Head, 615; 4 Gray,
95; *State* v. *Martin*, 56 Miss., 108.    Attention is specially
called to *Smith* v. *U. S.* and *State* v. *Craig, supra*.

A surety is everywhere held to be a favored debtor, and
the harsh rule contended for by the attorney-general is in
sharp contrast with this doctrine.    It is not a sufficient an-
swer to say that the sureties constituted the principal their
agent.    He became agent merely for the purpose of circulat-
ing the bond.    The sureties never gave the principal authori-
ty to discharge any one who had become, or might thereafter
become, a party to the obligation.    It is found as a fact in
this case, that the erasure occurred before the delivery of the
bond.    The erasure of a name from the body of a bond, or

as a signer of the bond, amounts to notice to the approving power of all the conditions. Murfree, § 53; Wade on Notice, § 90; 1 Am. & Eng. Enc. L., 506; 53 Me., 284; 63 Mo., 212; 18 Am. Dec., 640; 34 *Ib.*, 780; 29 *Ib.*, 370; 7 Blackf., 27; *Parker* v. *Foy*, 43 Miss., 260.

The attorney-general has dismissed as to all signing after Hart, thus admitting that they are released. No cases can be found that hold that the defense is more available to those who signed after Hart than those who signed before. It is admitted that the erasure would suggest to the board an inquiry into the facts. But the attorney-general contends that the inquiry would not have led to a knowledge of the condition and its violation. I submit that, if inquiry had been made, all the facts relied on by appellees, and especially by appellee, Allen, would have been learned. In fact, there is no telling what the board would have ascertained, if it had pursued the inquiry.

The judgment of the lower court cannot be reversed without ignoring the settled rules of law that for ages have been recognized as applicable to cases like this. If public policy demands a reversal of these rules, I do hope that the leading case in this departure will not be the case of the *State* v. *J. M. Allen et al.*

Argued orally by *T. M. Miller*, attorney-general, for appellant, and *John M. Allen*, for appellees.

WOODS, J., delivered the opinion of the court.

For the last time this cause, which involves public and private interests alike, is before us for conclusive determination, upon the decisive plea of *non est factum*, interposed by all the defendants yet remaining in court.

This plea, which, under the rulings of the court below, must be understood to embrace all the matter sought to be set up in the further plea of defendants, numbered 10, avers, in its essential parts, that the bond sued on is not their

act and deed, because they say, substantially, that, under the proviso to § 1, chapter 40, laws of 1880, the same being entitled, "An act to require the employment of convicts on works of internal improvement, and provide for the support of the penitentiary, without loss to the state," the board of public works, having first rejected all the bids received for the lease of the penitentiary, penitentiary property and convicts, for the term of six years, entered into a contract with J. S. Hamilton, J. A. Hoskins and Robert H. Allen, constituting the firm of Hamilton, Allen & Co., in July, 1880, whereby, in consideration of the sum of $29,420, to be paid annually, the said penitentiary, property and convicts were leased to said Hamilton, Allen & Co., for the term of six years, upon the terms and conditions provided by law, and that said contract was properly executed by the respective parties thereto; that, thereafter, as required by § 2 of said chapter 40, laws of 1880, the said lessees entered into a bond of the character of the one now sued on, the condition whereof was, that the said lessees should faithfully perform their said contract of lease; that the said § 2 of said chapter 40, requiring that said bond, so executed, should be approved by the board of public works, a form thereof was delivered to said Robert H. Allen, one of the lessees, to be circulated in the northern part of the state of Mississippi for signatures, with the understanding and upon the condition, that, after the said Allen had procured thereto as many signatures as he reasonably could, the said form of bond was to be returned to the defendants, Hamilton and Hoskins, at Jackson, there to be circulated for other and further signatures, and when such signatures, additional to those who had signed prior to their signing the same, should make up the penalty prescribed in the bond—to wit, $100,000—the said form of bond was to be signed by the principal obligors, the said lessees, and by them was to be delivered to the governor of the state, to be by him submitted to the board of public works for inspection and approval; that it was further understood and agreed that the

form of bond, or bond, so circulated and signed as aforesaid, was not to be regarded by any of the sureties signing the same as a completed instrument unless and until it should be signed by other sureties, so as to make up the full penalty of the bond after it had been transmitted by the said Allen to the said Hamilton and Hoskins for that purpose (the sureties, as among themselves, signing for the amounts set opposite their names); that said bond, or form of bond, was not to be a completed instrument until all such other sureties had signed the bond, according to the understanding and agreement before set out, and until it had been signed by the principal obligors, and thereupon deposited with the governor of the state, as *ex officio* president of the board of public works, to be by him handed to the said board of public works for approval, as required by law; that among other sureties signing the bond after its said transmission to Hamilton and Hoskins for circulation for signatures of such other sureties, was one Philip Hart, a solvent surety thereon, and worth the penalty of the bond, and that after said Hart signed said bond, it was signed by R. Burdett, J. L. Hebron and J. F. Townsend, as sureties also, and was thereafter signed by the principal obligors; that the said bond was signed by these defendants, as sureties, on the condition that it would not take effect as a bond, nor be a completed instrument, nor be delivered to the board of public works for approval, until the others signing, their co-sureties, would justify in an amount aggregating, with all the sums justified to by all the sureties, the full penalty of the bond, to wit, the sum of $100,000; that said Hart justified in the sum of $———, Burdett and Hebron in the sum of $8,000 each, and Townsend in the sum of $10,000, the several amounts justified to by all the sureties aggregating something more than $100,000, the penalty of the bond; that, while all the sureties were yet on the bond, it having been finally completed according to the understanding and condition on which these defendants signed, and before the same

had been approved by the board of public works, while it was in the hands of the governor, as president *ex officio* of the board of public works, or in the, hands of the principal obligors, or one of them, and while wholly out of the possession and control of these defendants, the said governor, or the said principal obligors, or one of them, permitted the said Hart to withdraw from said bond by the erasure of his, Hart's, name in the body of the bond, in its signature and in its "acknowledgment" (*sic*), at the request of Hart, and without the knowledge or consent of these defendants, or of any of the other sureties, including Hebron, Burdett and Townsend, who signed after Hart, and that this erasure of Hart's name was made prior to its delivery to and approval by the board of public works; and that the board of public works, thereupon, with full knowledge of the facts, and without the authority or consent of the defendants, approved the bond, whereby the said Hebron, Burdett and Townsend, as well as Hart, were released as the co-sureties of defendants, and whereby the amount for which the remaining sureties justified was reduced far below $100,000; and, therefore, that they are released from liability on said bond.

Besides this general plea, which we have stated with much fullness, one of the defendants joining therein, viz., John M. Allen, presented and asked leave to file his individual plea of *non est factum,* numbered, in the record, eleven, in which, besides much that had already been presented by him and his co-defendants in the plea just largely recited by us, he averred that he was informed by Robert H. Allen, the principal obligor, who circulated the bond for signatures in North Mississippi, as hereinbefore circumstantially detailed, that the said J. F. Townsend would be his co-surety if he, John M. Allen, would sign the bond; that he knew Townsend, and knew him to be a man of large means, and that he signed upon the understanding (additional to the conditions stated in the general plea of all the defendants) that Townsend should become his co-surety, and become liable on the bond with said defendant,

John M.. Allen; that,, with this additional understanding, John M. Allen signed, and that, as agreed and understood, said 'Townsend did subsequently sign, and justified in the sum of $10,000, but that Townsend and others had been released from liability upon said bond by reason of the erasure of the name, of Philip Hart, as hereinbefore specifically narrated; that, moreover, after the bond had been signed by this defendant and a number of other sureties in North Mississippi, it was delivered to Robert H. Allen, one of the principal obligors, to be taken to Jackson and circulated for other signatures, until enough signers as sureties should be obtained to qualify before the examining officer, so as to make the several sums, for which the sureties could and would justify, aggregate the sum of $100,000; and that the bond, when so completed, and when signed by the principal obligors, was to be then, and not before, delivered to the board of public works for approval.

The court declined to allow this individual plea to be filed when it was offered, holding, as appears in its order thereon in the record, that "the defense sought to be set up could be made under the seventh plea on which issue was joined." It is sufficient, for the present, to say that, in the progress of the trial, the course indicated by the learned judge in the court below was pursued, and evidence was offered, without objection, which tended to support this entire plea of said John M. Allen.

The issue joined thus was submitted to a jury, by which a special verdict was returned, embracing, amongst others not necessary to be mentioned, the following findings of fact, viz.: "We, the jury, agree and find that the erasure of the name of P. Hart was made from the bond sued on, after the same had been signed by all the parties whose names appear thereon, including the principals, and that the erasure was made without the knowledge or consent of any other surety, except Green, at the request of Hart, by the aid or procurement of one of the principals, J. S. Hamilton, in whose

hands the bond was before and after Hart signed, and before the same was delivered to the governor, and that the board of public works, when they were acting upon the bond, had their attention called to the erasure.   We further find, if the plaintiff is entitled to judgment on this finding, its damages are assessed at the sum of $44,082.11."

On this finding, the counsel for the state moved for judgment, but the Hon. Charles H. Campbell, judge of the fifth circuit court district, who had presided on the trial of the issue by interchange, having been called away before the jury returned the special verdict, and the presiding judge of the court, the Hon. J. B. Chrisman, feeling himself disqualified to make any order or render any judgment in the case, by consent and to the end that an appeal might be had and the controversy determined in this court, the motion of the state for judgment was denied, and judgment entered for these defendants, and the same was accordingly done, the Hon. Charles H. Campbell finally signing the bill of exceptions at the request of counsel on both sides, in order that the case might reach this court on appeal.

1. The question first to be considered is this : was the verdict responsive to the issue, and did it find all the material facts in favor of the defendants?   In answer to the inquiry, it is to be said that the findings of the jury do not embrace any covering those parts of the plea which aver the understanding, agreement or condition on which these defendants signed the bond when the same was being circulated for signatures.   And though the record shows abundant evidence offered by the defendants to have warranted a finding of these particular facts in favor of the defendants, and though the record demonstrates that the facts pleaded as to this understanding or condition of signing on the part of the defendants was not sought to be controverted, and is practically unassailed; and, though on the record before us no other finding than one in favor of the defendants, on these averments of the plea, could be permitted to stand, and that

a reversal on this ground would be a barren victory for the state, if another trial should be awarded on the same facts, yet the proper determination of this contention would not be free from embarrassing difficulties if there were no other lights to guide us. But it is not to be forgotten that the judge who tried the case was not present when the jury returned this not completely responsive verdict, and that there was therefore no opportunity given for a more perfect response under fuller directions from an enlightened court. Of necessity, the special verdict was compelled to be received and entered just as the jury returned it.

We are bound, too, to suppose that the learned and able lawyers who have managed the cause on the respective sides, saw and felt the full force of this view, and frankly met the exigency by an agreement embodied in the judgment of the court, which is in these words, viz.: "It being agreed between counsel, in open court, that, on appeal, said special verdict shall be considered with reference to the evidence, as well as the pleadings, and it is ordered that the clerk insert the same in the transcript when called for." Remembering the recognized ability and skill of the counsel who made this agreement, and had the same embodied in the judgment appealed from, we are forbidden, for a moment even, to entertain the thought that it was only meant that we should examine and consider the evidence in the usual manner. The merest tyro in the profession perfectly knows that in every case, where a bill of exceptions, containing the evidence, is taken and produced here, it is our duty to consider the same without a request, much less an agreement of counsel to that effect.

To arrive at any correct interpretation of the language employed by counsel, in this agreement, we are to bear in mind that the cause had been thrice tried in the court below, and twice heard before us, on appeal; that in this long and fiercely contested struggle, every contention had been determined, or had been eliminated, except the issue presented by

these defendants in their plea of *non est factum;* that final judgment had already been rendered against the principal obligors; that Hart, Hebron, Burdett, Townsend, and perhaps others, had been released by inexorable legal necessity; that the issue at last made by these defendants had been imperfectly responded to by the special verdict of a jury, under most embarrassing circumstances; and that the whole case, on all the pleadings and multitudinous proofs, should be finally ended, if possible, by this court, on a last appeal. We take it to be true, that, by this agreement of counsel, we are to examine this evidence in all its parts, and in its entirety, and give it such effect as, in law, it is fairly entitled to, regardless of mere technical and formal requisites; and that, if the evidence satisfies us that, on the point now being considered, the jury could not have found against the defendants, and that a reversal for the third time, in this court, would be an idle and fruitless determination, then we shall consider that as found by the jury which should have been found, and proceed to examine the case on the real question presented in the record submitted to us. This is our understanding of the agreement—an agreement eminently wise, and honorable to counsel, under the circumstances, we do not hesitate to affirm. Acting on this, our understanding, and looking at all the evidence in the record, we have no hesitation in declaring that the understanding and condition averred in the plea to have existed at the time defendants signed the bond are conclusively shown to have existed, as averred in the pleading.

We come now to consider the materiality and sufficiency of the defense presented by these defendants, by their plea of *non est factum.* We have here a case freed from all difficulty, growing out of the necessity of an assumption by the court that the complaining sureties signed the bond, according to custom, while it was in the care of the principal obligors, with an understanding that the bond was to be circulated, for additional signatures, until sufficient solvent

sureties, in number and amount, should sign and justify in the aggregate for the full penalty of the bond. There is no occasion for resort to the reasonable presumption that these defendants signed with the understanding that others, sufficient in number and amount, would become their co-sureties, and that when the bond, in its full penalty, had been properly signed by their co-sureties, and by the principal obligors, it should then be regarded as completed, and should, in that condition, be delivered to the approving authority. The plea distinctly avers these conditions in express terms, and we have already said that the evidence supports the averments of the plea.

This, then, is the case of a bond, signed by the defendants on the understanding and condition that the instrument should be circulated for other and further signatures, and should not be regarded as completed, and should not be delivered to the approving authority, until other solvent sureties should be obtained, who could and would justify, respectively, in such amounts as, added to the amounts set opposite the signatures to the bond of these defendants, would make, in the aggregate, the full penalty of the bond, to wit, $100,000. We have this also: the bond was circulated further by the principal obligors, or some of them, for signatures of solvent sureties thereon, according to this express understanding and condition, on which these defendants consented to sign and become liable, and that additional sureties were found and their signatures obtained to the bond, and that, still in pursuance of the distinct agreement made with these defendants, these additional co-sureties separately set opposite their respective signatures the amounts they were willing to justify to, and that the total amounts thus justified to by all the securities amounted to something more than the penalty of the bond, viz., $100,000.

According to the condition of signing by these defendants, the bond was now completed, and was ready for delivery to the approving authority; the defendants were bound, with

other sufficient solvent co-sureties in the full penalty of the bond, the whole number of the securities, as among themselves, having set opposite their respective signatures the several amounts to which they could and would justify, and to which, in fact, they did respectively justify.

While in this completed condition and ready for delivery, according to the condition on which these defendants signed, the name of P. Hart, one of the additional co-sureties, was erased by drawing a pen-line through the signature, and where it appeared, with those of all the other sureties, in the body of the bond, and in the jurat. All this was done at Hart's request, by one of the principal obligors, before the delivery of the bond to the approving authority, and without the knowledge or consent of any of the other sureties, either those signing before or those signing after Hart. In this altered condition, the bond was delivered to the board of public works, the attention of the board called to its then condition, and the same then approved.

In this connection it is well to remark that the suit was, originally, against all the sureties, Hart included. In the progress of the protracted litigation, however, Hart's non-liability being made manifest, the suit was dismissed as to him; and in the further progress of the cause, the non-liability of Hebron, Burdett and Townsend being made manifest —they having signed after Hart and before the erasure of his name and in reliance upon him as their co-surety—they, too, were discharged and released from liability.

It is not contended by counsel for appellees that the violation of a secret condition, on which sureties sign, by the principal, to whom the instrument has been intrusted by the earlier signers, will avail to release the sureties whose principal has been thus trusted by them, and who has disregarded the trust reposed in him, without notice to the approving authority of the limitation upon the power of the principal, and of his violation of the condition creating this limitation; and, on the other hand, it is not contended by the counsel

for the state, that those signing as sureties upon the understanding and condition that a particular person shall become their co-surety, will not be discharged from liability upon the bond so signed, if, afterwards, this particular person, with whom they were willing to be bound, shall actually sign, and subsequently his name shall be erased without their knowledge or consent. The reason is near at hand, and is stated by the state's attorney-general, viz.: the face of the altered bond would itself give notice of the facts and conditions.

The statement of these admitted propositions demonstrates how much nearer together the learned counsel are in a correct and harmonious apprehension of the law than would be inferred from a glance at the great record before us. The two propositions, taken together, are a very fair epitome of the law applicable to the case at bar. Blended, they harmonize perfectly, and thus blended and properly amplified, they meet the necessities of the issue before us; and they are supported not alone by reason—the highest authority—but by an unbroken line of carefully considered precedents in every court of last resort, state and federal, in the United States, with one solitary exception, so far as protracted and repeated examination enables us to say.

The *secret* condition by which a person signing as a surety undertakes to protect himself cannot be successfully pleaded. By relying upon a *secret* condition with the principal obligor, the confiding surety has made it possible for his agent, the principal obligor, to mislead or defraud, and if loss shall befall by reason of the trusted agent's disregard of the *secret* condition, that loss must be borne by the too confiding surety. The loss must be placed upon him whose trust in another made it possible for it to occur. In this class of cases, as in all others in life, he who trusts most must suffer most. The law is that the surety who undertakes, upon a *secret* understanding with his principal, to be bound for him and with him, must be held liable upon his principal's default, even though the principal disregard and violate this

*secret* condition, to the loss and damage of the too trusting surety. But it is equally the law, and the complement of the announcement just made, that if this secret condition is brought to the notice of the beneficiary in the instrument, or to the notice of the authorized agent of the beneficiary, and notice is had by the beneficiary, or his agent, of the departure from the condition by the principal, to whom the instrument has been intrusted, then the beneficiary, having it in his power to protect the surety as well as himself, if he act with prudence, after notice, cannot hold such surety liable, if he receive and rest upon the bond signed upon condition by the surety, with condition broken by the principal, and notice thereof to the obligee in due time. In other words, a secret, undisclosed understanding by a surety in signing a bond will not avail to avoid liability, in the absence of any notice to the obligee of the violation of the condition by the principal; but, with notice to the obligee, certainly where the condition has been disregarded in such manner as to increase the surety's liability, the surety is not liable.

It is admitted that, if these defendants had signed the bond on condition that Hart should become their co-surety, and Hart had subsequently in fact become their co-surety, the defendants would not be liable, if, afterward, Hart's name had been erased from the bond and he discharged, without the knowledge or consent of the defendants. What substantial distinction can be drawn between this admitted case and the real case in hand? Enlarge the imaginary case of the state's counsel, and let us suppose that the defendants signed with the understanding that Hart, Hebron, Burdett and Townsend should become their co-sureties, and that they did actually become so, and subsequently all their names had been erased, all the sureties would clearly be released from liability. In such case, the condition is found, the violation of the condition is found, the increase of the liability of the remaining sureties is found, and notice of all these things by reason of the erasures of the names is found. On principle, how can

this supposed case be distinguished from the real case? In the real case the defendants signed on the understanding and condition that enough other solvent persons should sign, for such amounts as they could justify to, which, added to the amounts justified to by these defendants, would aggregate the full penalty of the bond; these other solvent sureties, sufficient in number and amounts, do accordingly actually sign, but, after the bond had been completed, in accordance with the original agreement between the defendants and one of the principal obligors, to wit, R. H. Allen, one of these added co-sureties, a solvent person, who had justified, as appeared on the face of the bond, for $5,000, has his name erased in the body, in the signature and in the jurat to the bond, and thereby this retiring surety is released from liability. But, as perfectly appears from the record, by the inexorable logic of law, all the other solvent sureties signing after Hart have been released, by virtue of the release of the one whose name was erased, the liability of these defendants largely increased, and notice on the face of the bond given, which, if followed up, would have disclosed the facts and the consequences flowing from them, as they now are plainly to be seen. We ask again, in reason and on principle, what is there to distinguish the supposed case from the real case at bar? In the former case, four certain named persons are to sign with these defendants; in the latter case, enough solvent persons are to sign with the defendants, in sums sufficient to make the full penalty of the bond. In the first case, all four named sureties are discharged from liability by reason of the erasure of the name of one of that number first signing, and those signing in reliance upon the four thus released must likewise be conceded to be released. Why shall not the like result follow the discharge of all the additional solvent sureties by reason of the erasure of the name of the first solvent surety signing?

It seems clear to us that, after the bond had been completed as agreed and conditioned by these defendants, and

before it had been approved by the board of public works—indeed, before it had been delivered to the board for approval—a material alteration in the same was made, whereby the liability agreed to be assumed, and actually assumed, by the defendants had been largely increased without their consent, and with notice of this alteration to the approving authority, and the defendants are released from liability, unless they can be held, as insisted by the state, on another ground, to wit; the want of notice of the understanding and condition of defendants signing.

This view of the principal contention in the case at bar is in perfect harmony with the spirit and reason of the overwhelming current of adjudicated cases in the state and federal courts in this country. In some the facts are strikingly similar to the case before us; in more, in nearly all, the spirit and reason of the decisions are the same. We content ourselves with citing a few out of the great number examined. See *Smith* v. *U. S.*, 2 Wall., 219; *Smith* v. *Weld*, 2 Pa. St., 54; *Dickerman* v. *Minor*, 43 Iowa, 508; *State* v. *Craig*, 58 Iowa, 238; *State* v. *McGonigle*, 101 Mo., 358; *State* v. *Churchill*, 48 Ark., 426; *Agawane Bk.* v. *Sears et al.*, 4 Gray, 95; *Commissioners* v. *Daum*, 80 Ky., 388; *Graves* v. *Tucker*, 10 Smed. & M., 9; *Nash* v. *Fugate*, 24 Gratt., 202; *Ib.*, 32 Gratt., 780; *McCormick* v. *Bay City*, 28 Mich., 527.

On this branch of the case, it is now to be added that the surety, John M. Allen, signed on the conditions named in the general plea of himself and all the others, appellees, and, that, besides, he shows that he signed with the understanding that one of the additional signers to the bond, J. F. Townsend, was to be his co-surety. It will be remembered that Townsend actually signed as agreed, and that signing after Hart, and prior to the erasure of Hart's name, he has been unavoidably released from liability, and the suit dismissed as to him by reason of Hart's release, on whose co-suretyship he, Townsend, relied, and on which he had the right to rely, the erasure of Hart's name being conceded to be notice to

the approving authority of the condition on which Townsend signed. With Hart discharged by pitiless legal necessity, and with Townsend discharged by the same inexorable authority, because of his reliance on Hart as his co-surety, are we not driven irresistibly to the conclusion that John M. Allen is released by the same imperious necessity?

If John M. Allen must be held released, as we say he must, how shall the other defendants who signed after him, relying on his co-suretyship, he held? It is impossible to find any satisfactory answer to the inquiry.

We have already remarked that there appears to be one discordant note in the universal voice of adjudication. The laborious research of the attorney-general of the state has produced many authorities bearing upon this particular subject, but a careful examination of them, with others unearthed in our own researches, produces the one solitary disagreeing view of the law. That is the case of the *Wilmington & Weldon R. R.* v. *Kitchin et al.*, 91 N. C., 39. The learned counsel concedes, with caution, that the court, in that opinion, goes too far in holding a surety liable who would seem to have been not liable by the universal juridical judgment outside of the state last referred to. The Kitchin case is in violent conflict with the views herein advanced, and in irreconcilable antagonism to the long line of authorities hereinbefore noted. The doctrine of the Kitchin case has been well declared, by another court of last resort in commenting on it, to be unsupported by precedent, and wanting in that strength of argument which gives power to the general rule.

There remains only to be considered the reach and value of the notice afforded to the board of public works by the erasure of Hart's name, to which, confessedly, their attention was directed by the governor of the state when the bond was submitted for approval.

If we understand the state's position on this point, the contention is, that the erasure of Hart's name, appearing

thrice on the face of the bond, was notice which required inquiry, by the board of public works, into the circumstances of Hart's connection with the other sureties, or what understanding they had with reference to him. We have already endeavored to demonstrate that, though the agreement of these defendants was not to sign with Hart by name, their agreement was to sign with other solvent sureties, and that Hart was accordingly secured as one of these contemplated solvent additional co-sureties, and afterwards released by the erasure of his name, whereby the other additional solvent sureties, Hebron, Burdett and Townsend, were also released, and that the legal liability of the appellees is not other than it would be if Hart, by name, had been agreed upon as their co-surety.

We conclude, therefore, whatever would have been notice to the board of public works if Hart had been agreed upon by name as a co-surety, will be notice, also, under the averments of the plea and the evidence in the case. It will not do to assume that, if inquiry had been made by the board of public works, the simple facts that the defendants signed the bond for circulation, and that they had no understanding with regard to Hart, and that he merely signed and then withdrew, would only have been discovered. That is the ground taken by the state, but its untenableness is demonstrable in a breath. The inquiry would have ascertained what the state admits; but, unless reason and law had been deaf and blind, it would have necessarily appeared, also, in connection with the fact that the appellee signed the bond for circulation, that they coupled their signing with an express condition, and this condition was as readily ascertainable as the other fact of their signing for circulation, which, it is admitted, inquiry would have disclosed; and while inquiry would have disclosed the fact that the appellees had no understanding with regard to Hart by name, the same inquiry would have disclosed the fact that they did have an understanding with reference to Hart and others as solvent co-sure-

ties, and that the appellees were not consenting to Hart's release. Inquiry would, with equal certainty, have disclosed that Hebron, Burdett and Townsend, the other co-sureties signing after Hart, signed relying on him as their co-surety, and that they were not consenting to his release. As is said, with a touch of grim humor, by counsel for appellees, "there is no telling what inquiry would not have ascertained."

It might as forcibly be contended for the state, that the erasure of Hart's name was only notice of that fact. That is not the position of the state's counsel, of course, but we think such ground might be as well defended as the position taken, which would cut off inquiry as soon as begun. If the doctrine of notice is not to be emasculated, we must continue to hold that whatever is sufficient to give notice to a party is notice of every thing which inquiry, if made, would disclose.

On the question of notice specifically, our own court has long acted on this definition of notice, nor are we aware of any restrictive qualification put upon it elsewhere. This idea of the reach and value of notice underlies all the cases in which sureties have been released by erasures of names, or other alterations appearing upon the face of an instrument on which recovery is sought. It seems superfluous to say more. See 16 Am. & Eng. Enc. L., 792 and note, with the countless cases therein cited; *Parker* v. *Foy*, 43 Miss., 260; *Buck* v. *Paine*, 50 *Ib.*, 648; *Plant* v. *Shryock*, 62 *Ib.*, 824.

*Affirmed.*