### BENJAMIN PEARL *v.* IRA A. CORTRIGHT.

1. PROMISSORY NOTES. *Name on back. Maker.*

   One who writes his name on the back of a promissory note, for the same consideration for which it was given, in pursuance of an . agreement between the payee and the original maker that he should be a surety thereon, becomes a co-maker of the note, although he so wrote his name after the note had been made and delivered by the original maker.

2. SAME. ` *Surety. Cancellation of security.*

   Where the payee of a note was obliged by the terms of a deed, temporarily securing his debt, to cancel the deed when the original maker procured a designated person to become surety on the note, the cancellation of the deed by the payee according to his obligation will not release the surety.

FROM the chancery court of Sharkey county.

HON. WILLIAM C. MARTIN, Chancellor.

Pearl, appellant, was complainant and Cartwright, appellee, was defendant in the court below. From a decree in defendant's favor the complainant appealed to the supreme court. The question of jurisdiction was not raised in the court below, on the contrary defendant made his answer a cross bill and sought affirmative relief. Of course the jurisdiction of the chancery court could not (constitution 1890, sec. 147) be raised in the supreme court. The facts are stated in the opinion of the court.

*R. L. McLaurin* and *Green & Green*, for appellant.

The original consideration existing between Pearl and Marriott is the consideration that makes Cortright's signature binding on him. His signature relates back to the original making and delivery of the notes, and this too whether he knew of this agreement or not, especially so since Marriott told him when he endorsed the note that he, Marriott, had promised Pearl that he, Cortright, would endorse at the time the notes were made and delivered. *Clopton* v. *Hall*, 51 Miss., 482.

It is perfectly evident from the evidence in this case that although Cortright endorsed subsequent to the making of the notes and the delivery, that it was done in pursuance of an agreement and arrangement for the credit of the maker and for the security of the payee; therefore it was not necessary for it to rest upon a consideration of its own.

It cannot be contended that, if there was any fraud practiced on Cortright, Pearl was a party to it, because he was not present when Cortright signed and had no conversation with him. He did not know what Marriott told Cortright about retaining the security. 1 Am. & Eng. Ency. Law., 337, and note; *Anderson* v. *Norvill*, 10 Ill. App., 240; Tiedman on Commercial Paper, 256; *Williams* v. *Perkins*, 21 Ark., 18; *Harrington* v. *Brown*, 77 N. Y., 72; 1 Brant on Suretyship and Guaranty, sec. 15, and cases cited.

Even if Pearl, the creditor, had notice of Cortright's agreement with Marriott, Cortright is not discharged by reason of the cancellation, except to the extent of the value of the property released. *Picard* v. *Shantz*, 70 Miss., 381; 2 Brandt on Suretyship and Guaranty (2d ed.), 343. See *Dunn* v. *Parsons*, 40 Hun. (N. Y.) 77, which says: "But an accommodation endorser is held not absolutely discharged by the holder releasing real estate of the maker from the lien of a judgment on the note."

In *Payne* v. *Bank*, 6 Smed. & M., 38, it is said: "A creditor

who takes collateral security for his debt, is bound to hold it impartially and justly and if it be lost by his negligence or improper conduct, the surety on such debt may bar the creditor of so much of his demand as he may have received from such collateral.''

*Wright* v. *Watt*, 52 Miss., 637, decides that ''There is a class of cases to the effect that the creditor is bound to deal with all collateral securities given him by the principal debtor impartially, and if by his negligence or improper conduct they are lost or surrendered, the surety is released at least to the extent that these securities might have been available, and for the obvious reason that the surety has a right to pay the debt, and be subrogated on payment to these rights of the creditor. Citing *Payne* v. *Commercial Bank*, 6 Smed. & M., 38.

The fraud of Marriott, if there was fraud in securing the endorsement of Cortright, cannot be availed of by Cortright in an action against him by the payee, if Pearl, the payee, was not a party to the fraud and paid value for the notes. *Hoffman & Co.* v. *Bank of Milwaukee*, 12 Wallace (U. S.), 192; *United States* v. *Bank of the Metropolis*, 15 Peters, 393.

There was no necessity for notice, demand or protest in this case. Cortright was only entitled to reasonable notice. If entitled to notice and protest, the failure in this respect only applies to the first note. *Ireys* v. *Wallace*, 76 Miss., 277; Bryant on Suretyship and Guaranty, sec. 202; *Ray* v. *Simpson*, 22 How., 250; Tiedman on Commercial Paper, sec. 421; *Montgomery* v. *Kellogg*, 43 Miss., 486; Brandt Suretyship and Guaranty, vol. 1, sec. 97.

*Monroe McClurg* and *McLaurin & Clement*, for appellee.

1. The difference between guaranty and suretyship is: ''A surety is generally a co-maker of the note, while the guarantor never is a maker; and the leading difference between the two is, that the surety's promise is to meet an obligation which becomes his own immediately on the principal's failure to meet

it, while the guarantor's promise is always to pay the debt of another." Dan. Neg. In., vol. 2 sec. 1573 (1891).

2. The difference between guaranty and endorsement is "The liability of a guarantor also differs materially from, and is more onerous than that of an endorser. The endorser contracts to be liable only upon condition of due presentment of the bill or note on the exact day of maturity and due notice to him of its dishonor. And he is absolutely discharged by failure in either particular, although he may suffer no actual damage whatever. The guarantor's contract is more rigid, and he is bound to pay the amount upon a presentment made, and notice given to him of dishonor, within a reasonable time. And in the event of a failure to make presentment and give notice within such reasonable time, he is not absolutely discharged from all liability, but only to the extent that he may have sustained loss or injury by the delay." *Ib.*, sec. 1754.

3. The rules announced in *Rey* v. *Simpson*, 22 How. (U.S.), 241, reported with copious notes in Book 16, Law Ed. Mar., p. 260, are stated as follows: " When a promissory note, made payable to a particular person or order as in this case, is first indorsed by a third person, such third person is held to be an original promisor, guarantor or indorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place."

(*a*) If he puts his name at the back of the note at the time it was made, as surety for the maker and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered as a joint maker of the note.

(*b*) On the other hand, if his indorsement was subsequent to the making of the note, and he puts his name there at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor.

(*c*) But if the note was intended for discount, and he puts

his name on the back of it with the understanding of all the parties that his indorsement would be inoperative until it was indorsed by the payee, he would then be liable only as a second indorser in the commercial sense, and as such would clearly be entitled to the privileges which belong to such indorsers.''·

This last authority also states the rules for admitting parol testimony to show the intention of the indorser, guarantor or surety. See, also, *Good* v. *Martin*, 95 U. S., 90; *Moses* v. *Nat. Bank Lawrence County*, 149 U. S. (Law Ed., 37), p. 743); 1 Dan. Neg., sec. 720 and notes.

4. Upon a long list of authorities Mr. Story, in sec. 133 of his work on Promissory Notes, says: "But, suppose he is not the payee of the note, but he indorses it, what is the nature and effect of such an indorsement? If he signs it at the time when the note is made, then he will ordinarily be deemed a guarantor of the note upon the footing of the original consideration, and if he indorses it subsequently, not being a regular indorsee from or under any of the antecedent parties, he will, in like manner, still be deemed a guarantor, if there be a sufficient consideration for his indorsement, but not otherwise.''

5. In Holcombe & Gholson's American Notes to Smith's Mercantile Law, at p. 265, the American doctrine is stated as follows: "A blank indorsement, made after the execution of the note, can operate at best but as a guaranty, and then only upon proof of a distinct and valid consideration.''

6. In *Clopton* v. *Hall*, 51 Miss., 482 (486), the doctrine is announced as follows : " It is settled by authority in this state, (*Thomas* v. *Jennings*, 5 Smed. & M., 630; s. c., 13 *Id.*, 623), and supported by well considered cases in other states, that if a person writes his name on the back of a promissory note, so that he cannot be considered as an indorser in the ordinary and usual way, as where A is the maker and B is the payee, and in that condition of parties, C writes his name on the back, it is open to testimony to show what sort of contract C intended to

make. The liability will be such as shall be established by the proof. If such an indorsement was contemporaneous with the making of the note, it will connect itself with that contract, and will be supported by its consideration, but if subsequent thereto, and done in pursuance of an arrangement for the credit of the maker, and for the security of the payee, it must rest upon a consideration of its own, otherwise it is *nudum pactum.*" *Moise* v. *Bird*, 11 Mass., 436; *Hunt* v. *Adams*, 5 *Id.*, 358; *White* v. *Howland*, 9 *Id.*, 314; *Miller* v. *Gaston*, 2 Hill, (N. Y.), 190; *Hough* v. *Gray*, 19 Wend., 202; *Leonard* v. *Sweetzer*, 16 Ohio, 4.

This last quotation shows that the Massachusetts doctrine has been adopted in this state. The nature of the transactions in irregular indorsements must be shown. *Holmes* v. *Preston*, 70 Miss., 152.

Appellant's hope is to show that, notwithstanding the indorsement was made more than two months after the notes had been made and delivered to the payee, and secured by a recorded trust deed, the consideration of such indorsement related back to the consideration supporting the notes themselves, because of an agreement for the credit of the maker at the time of the making of the notes. The previous arrangement spoken of by Judge Simrall in the *Clopton case* had reference to an arrangement made between the parties to the transaction including the indorser or party sought to be held liable.

Argued orally by *Garner W. Green*, for appellant, and by *Monroe McClurg* and *H. J. McLaurin*, for appellee.

TERRAL, J., delivered the opinion of the court.

On the 1st day of February, 1897, R.. N. Marriott was due Pearl a large sum of money, and Pearl then had a suit against him for some personal property mortgaged to him to secure said debt. In compromise and settlement of said suit Marriott agreed to make Pearl two notes of $200 each, payable, one on

the 15th day of December, 1897, and the other on the 15th day of December, 1898, and to give as surety on said notes Ira A. Cortright, a merchant at Rollingfork, who was then absent in New York, and until his return and signature thereto Marriott was to execute a mortgage or deed of trust on certain personal property, which deed of trust was to be canceled by Pearl when Cortright signed the notes. This arrangement was agreed to. The temporary deed of trust was executed and filed for recording, and upon the return of Cortright the notes signed by Marriott were taken by him to Cortright, who, upon his solicitation, indorsed his name upon the notes. Thereupon Pearl complied with his agreement with Marriott by going with him immediately to the court-house, and marking upon the record of said deed of trust its cancellation. Marriott having died, and no administration having been taken upon his estate, Pearl brought this bill to recover the contents of said notes; and from a decree in Cortright's favor Pearl takes this appeal.

We think the holding of the chancellor is erroneous. It is quite plain, under the circumstances stated, that Cortright was a promisor and co-maker with Marriott in the execution of the notes sued on, and that he participated in the consideration upon which they were based. The placing by Cortright of his signature upon the back of the notes, instead of upon the face of them, is immaterial, and did not alter the effect of the transaction. It is true he signed the notes some weeks after they were signed by Marriott, but he did so in execution of an agreement had between Pearl and Marriott upon the day of their date, and thereby participated in the consideration supporting their validity as fully as did Mariott himself. The consideration which supports the validity of the notes between Pearl and Marriott supports their validity between Pearl and Cortright. We think Cortright a co-maker of the notes, and that they were supported as against him as well as against Marriott by a valid consideration. *Polkinghorne* v. *Hendricks*, 61 Miss., 366; *Clopton* v. *Hall*, 51 Miss., 482; *McNaught* v.

*McClaughry*, 42 N. Y., 22 (1 Am. Rep., 487); Tied. Com. Papers, sec. 157; *Moies* v *Bird*, 11 Mass., 436 (6 Am. Dec., 179).

2. It is claimed that the cancellation of the deed of trust of February 1, 1897, which was given by Marriott, to be of force until Cortright signed the notes, rendered them uncollectible to the extent of the security canceled. But it is only when a creditor fails to collect a security which he could have enforced that he must suffer the loss of his default. Pearl could not have enforced this trust deed, because it was expressly agreed between him and Marriott that it should be canceled when Cortright signed the notes. 2 Daniel Neg. Inst., sec. 1311. It would have been a fraud upon the part of Pearl not to have canceled it. If Cortright relied upon its retention by Pearl, he should have disclosed his desire to him, and otherwise the understanding between him and Marriott did not affect Pearl, whose agreement with Marriott was that it should be canceled when he got the suretyship of Cortright to the notes. Pearl was not affected by any fraud practiced by Marriott upon Cortright in inducing him to sign the notes, of which he had no knowledge. *Graves* v. *Tucker*, 10 Smedes & M., 9; *Robb* v. *Halsey*, 11 Smedes & M., 140, 147; *State* v. *Allen*, 69 Miss., 508, 522 (10 South., 473; 30 Am. St. Rep., 563).

The decision of the court below must be reversed.

*Reversed.*