ADRIAN & VOLLERS v. McCASKILL & McLEAN.

*Negotiable  Paper—Liability  of  Indorsers  between  Themselves—*
*Blank  Indorsements,  Oral  Evidence  to  Explain.*

1. One who obtains possession of a negotiable paper, after indorsing it, is restored to his original position, and cannot hold intermediate parties who could look to him. It is equally true that one who derives possession of the paper from him, with notice of this fact, cannot hold such intermediate indorsers liable; and when such indorsements are in *blank,* oral testimony is admissible to show the relation in which they stand.

2. The construction placed upon *The Code,* § 177, by *Harris* v. *Burwell* and *Martin* v. *Richardson,* is confined to the makers of promissory notes, and does not apply as between indorsers.

3. The payee in a negotiable note indorsed it in blank and delivered it, before maturity, to McC. as a collateral. McC. also indorsed the note in blank before maturity, and delivered it to W. & Co. as collateral. McC. redeemed and took up the note from W. & Co., before its maturity, and continued to hold it until *after its maturity,* when he returned it to the payee without erasing his (McC.'s) name as indorser. The *payee* then sold the note to plaintiffs for value. Plaintiffs had no actual notice of the former dealing and transactions connected with the note: *Held,* (1) that as plaintiffs derived their title directly from the original payee, who had re-acquired title, they could not hold the indorser McC.; (2) that plaintiffs were affected with, and bound by, notice of what appeared on the note itself, to-wit, that the person from whom they purchased was the payee and first indorser; (3) that the indorsement of McC., although in blank, could not have been

filled up by plaintiffs with their own names, because, having purchased the note from the payee, whose indorsement was *prior* to McC.'s, it would have been a gross wrong, if not a fraud, upon McC.; (4) that plaintiffs could not hold McC. as an accommodation indorser or guarantor, because, having purchased the note after maturity, and with notice of its dishonor, the facts which discharged McC. could be set up as a defence.

CIVIL ACTION, tried before *Shipp, J.*, at January Term, 1889, of the Superior Court of NEW HANOVER County.

The following is a statement of the facts agreed upon by the parties:

On the 10th day of January, 1884, one Mary J. Fairly executed her promissory note in writing, under seal, a copy of which said note and the endorsements thereon is as follows, to-wit:

"$1,386.65.          "LAURINBURG, N. C., Jan. 10, 1884.

"On or before the first day of November next I promise to pay to W. C. Patterson, or order, the sum of one thousand three hundred and eighty-six dollars and sixty-five cents for value received. This note to bear interest at the rate of ten per cent. after maturity.

"January 10, A. D. 1884.

"Payable at the office of McCaskill & McL.

"MARY J. FAIRLY." [Seal.]

Upon which were the following indorsements, to-wit:
"W. C. PATTERSON,
"McCASKILL & McLEAN."

"Received on the within note forty-five dollars and ninety-seven cents.          W. C. PATTERSON.

"January 14, 1885."

That afterwards, in the month of January, 1885, and after the maturity of the said note, plaintiffs became the pur-

·chasers for value of the said note, from the said W. C. Patterson, indorsed as above set forth, without any actual notice . whatever of any of the equities or defences set up in the answer of the defendants, who were sued as indorsers.

It is admitted that the following facts are true: That early in the year 1884, the defendants agreed with W. C. Patterson, the payee named in the note described in article two of the complaint (and set forth above), to make advancements to him in money and goods during said year, to enable him to cultivate his farm during said year, and to secure the defendants for such advancements as they might make to him, said Patterson indorsed the said note in blank and delivered it to the defendants in February, 1884, to be held by the defendants as collateral security for such sum or sums of money as he (Patterson) might owe the defendants at the end of 1884; and that on the 23d day of February, 1884, the defendants indorsed said note in blank, and, with the knowledge and consent of said Patterson, delivered the same to Geo. W. Williams & Co., of Wilmington, N. C., to be held by said Geo. W. Williams & Co. as collateral security for money loaned to the defendants in 1884, and that the indorsement on said note by the defendants was solely to secure said Geo W. Williams & Co., as above stated; that on the 15th of October, 1884, the defendants paid the said Geo. W. Williams & Co. the money borrowed of them as above stated, and the said Geo. W. Williams & Co. returned the aforesaid note at the same time. to the defendants: that the defendants held the said note thereafter as collateral security, as aforesaid, until the 5th day of December, 1884, when they returned said note to the said W. C. Patterson, they being satisfied to trust him for the balance then due them without said collateral security, and, at the time the defendants returned said note to the said Patterson, they, by accident, oversight and mistake, failed to erase their

names as indorsers on said note; that at the time said note was returned to said W. C. Patterson, it was well known to him that they were not liable as indorsers on said note, and they believe he well knew that they failed and omitted to erase their names through accident, oversight and mistake, and that it was well known to the said W. C. Patterson at the time the defendants returned aforesaid note to him, on the 5th of December, 1884, that the names of the defendants, as indorsers in blank, were not there for his accommodation, and that he well knew he had no legal or moral right to use their names as such, and that he well knew he had no right to deliver said note to plaintiffs with the indorsement of the defendants in blank on the same.

The plaintiffs objected to the introduction in evidence of the said facts set up by the defendants, and insisted that, as it was admitted (as hereinbefore stated) that they had no actual notice of them, that the evidence of said facts was not competent or admissible against them. His Honor held that the evidence was competent, and thereupon gave judgment for the defendants as set forth in the record of this action. From this judgment the plaintiffs appealed.

*Mr. E. S. Martin,* for the plaintiffs.
*Mr. Jno. D. Shaw,* for the defendants.

DAVIS, J. (after stating the case). The note is dated January 10, 1884, and is payable to " W. C. Patterson or order," on the 1st day of November. It is indorsed by the payee and by the defendants, the name of the payee appearing as first in order. On the 25th day of January, 1885, more than twelve months after its date, and long after its maturity, the plaintiffs became the purchasers from the payee, with the indorsement as set forth.

Were the facts, admitted to be true, admissible to explain the character and nature of the indorsement of the defendants?

The plaintiffs say that, as they had no actual notice of "any such equities of defence," and were purchasers for value, the evidence was not competent as against them.

By statute, promissory notes, whether with or without seal, are made assignable, "in like manner as inland bills of exchange are by custom of merchants in England." They are, in the language of the mercantile law, 'negotiable," and may be transferred and negotiated, free from any equities which exist between the original parties to them. "Each indorser, including the payee, down the line, has and passes the legal title, and his indorsement in legal import is a contract with his indorsee, and all subsequent holders by indorsement, that the maker will pay the note, or * * * he will." *Hill* v. *Shields*, 81 N. C., 250, and the cases there cited, and innumerable decisions, English and American, cited in Parsons, Daniel, Randolph and other elementary writers upon the subject, indicate the solicitude of courts to protect *bona fide* purchasers and innocent holders of negotiable paper, so essential to commerce and trade; and the construction placed upon sec. 177 of *The Code* (C. C. P., § 55), in *Harris* v. *Burwell*, 65 N. C., 584, and *Martin* v. *Richardson*, 68 N. C., 255, has been limited to the makers of promissory notes, &c., and held not to apply as between indorsers.

Conceding the importance of protecting *bona fide* holders of commercial paper "in its unchecked circulation," what are the liabilities of the defendants in the present case? That the holder of a negotiable note is presumed to be the owner admits of no question, and that, after such a note is put in circulation, indorsers are liable in the order of succession, is equally clear, if the indorsement be not limited or qualified. No prior indorser can look to any subsequent indorser. "One who obtains possession of a bill or note, after indorsing it, is restored to his original position, and cannot, of course, hold intermediate parties, who could look to him again." 2 Ran. Com. Pa. S., 719. It must be

equally clear that one who derives possession from him, with notice of this fact, cannot hold such intermediate indorsers liable, and, when such indorsements are in *blank*, parol testimony is admissible to show the relation in which they stand. *Ibid.*, §§ 778, 841 and 883.

When the note was returned to Patterson, he became again the owner, and, as between him and any subsequent in-dorsers, the relation of indorser and indorsee ceased. The plaintiffs were not the indorsers of the defendants. It is clear that Patterson could not, by reason of the blank indorsement of McCaskill & McLean, hold them liable for the note, for he stood in the relation to them of a prior indorser. The plaintiffs derived their title directly from Patterson, the original payee, who had re-acquired the title, and not as successive indorsers, deriving title through the indorsement of the defendant; and this distinguished this case from *Hill* v. *Shields, supra; Parker* v. *Stallings*, Phil., 590, and similar cases.

The plaintiffs were affected with, and bound by, notice of what appeared upon the note itself, and they took the note from the original payee, bearing upon its face the fact that he was the first indorser, and that the defendants were his indorsees.

An indorsement in *blank* by the payee is presumed to have been intended as a transfer, and, though this may be rebutted by parol proof (*Davis* v. *Morgan*, 64 N. C., 570), the admitted facts in this case show that the indorsement by the payee was in accord with the *presumption*—a transfer to McCaskill & McLean.

But it is insisted that, as between the indorsers in blank, the holder may fill the blank by making it payable to himself, or to any one he may choose. This is so, where he obtains the note, not from the payee or a prior indorser, but holds it as a *bona fide* purchaser, without any knowledge or notice of the relation sustained by prior indorsers to the note. In the present case, if the plaintiffs, purchasing the note,

not from the defendants, but from the prior indorsing payee, had filled the blank indorsement of McCaskill & McLean to themselves, it would not have been in accordance with what they knew the fact to be, and would have been a gross wrong, if not fraud, upon the defendants.

The plaintiffs further rely upon the well-settled rule " that whenever one or two innocent persons must suffer loss by the acts of the third, he who, by his negligent conduct, made it possible for loss to occur, must bear the loss, for it is against reason that an innocent party should suffer for the negligent conduct of another," and that the defendants, by neglecting to erase their indorsement, "*induced* the plaintiffs to rely on the legal import of the indorsement, *and ought not to be allowed*, against the plaintiffs, purchasers for value and without notice, to make proof of the alleged facts."

Though the plaintiffs had no "actual notice," we have already seen that they were charged, in law, with notice of facts apparent upon the face of the paper which they pur-·chased from Patterson.

But the defendants may have been indorsers for *accommodation*, or as *sureties* or *guarantors*. True; and the indorsement of a note by a third person, made at the time of its execution, binds him, according to the intention of the parties, either as joint principal or as surety. *Baker* v. *Robinson*, 63 N. C., 191.

If the plaintiffs looked to the defendants as accommodation indorsers, or as guarantors, then, as they purchased the note from the payee *after* maturity, they were not " *bona fide* holders before maturity," but had notice, as appeared upon the face of the paper, of its dishonor. Rev. Com. Paper, sec. 672; *Bank* v. *Lutterloh*, 95 N. C., 495; *Chaddock* v. *Vanness*, 35 N. J., 517.

So, whether by the one way or the other, the plaintiffs ·cannot hold the defendants liable.

No error.                                        Affirmed.