E. B. HAWKINS *v.* J. T. SHIELDS.

[57 South. 4.]

1. BILLS AND NOTES. *Indorsement. Rights of parties.*

The indorsement of a bill or note is not merely a transfer thereof; but it is a fresh substantive contract embodying all the terms of the instrument in itself.

2. SAME.

The indorser of a bill or note engages that the bill or note will be accepted or paid as the case may be according to its purport. That the bill or note is in every respect genuine, that it is the valid instrument it purports to be, that the ostensible parties are competent and that he has the lawful title to and the right to indorse it; but this engagement is conditioned upon due presentment of demand and notice.

3. BILLS AND NOTES. *Indorsement.*

As between the indorser and indorsee there is no difference in the contract of indorsement, so far as the rights and liabilities of the indorser are concerned, when the indorsement is made before and when made after maturity, the only difference being that when the indorsement is made before the maturity of the bill or note, the time. of payment is fixed by the terms of the instrument itself but when the indorsement is made after maturity, payment must be demanded of the payor within a reasonable time and notice in the event of refusal given to the indorser in order to charge him.

4. BILLS AND NOTES. *Indorsement after maturity. Reasonable time.*

In an action on a bill or note indorsed after maturity, when the facts are few and simple, it is within the province of the court to determine what is a reasonable time in which to make demand for payment, but when they are complicated and doubtful, they should be left to the ascertainment and judgment of the jury under proper instructions from the court. When the facts are ascertained it is for the court to determine what is a reasonable time as a matter of law.

5. EVIDENCE. *Documentary evidence. Parol evidence to vary.*

Parol evidence is never admissible to contradict or vary the terms of a valid written instrument, but this rule does not exclude parol evidence to show want or failure of consideration, or in cases of irregular indorsement or to impeach the original or present indorsement on the ground of fraud nor does it exclude parol evidence to the effect that the indorsement was upon trust or for some special purpose, as from a principal to an agent, or for collection merely, or as an escrow upon an express condition that has been complied with, and in cases of fraud.

6. BILLS AND NOTES. *Transfer. Indorsement in blank.*

Where the payee of bills or notes for the purpose of using them as collateral has indorsed them in blank, and later, after paying the debt for which they were pledged and receiving them back, sold and delivered them with the blank indorsement upon them, this act was equivalent to a new indorsement.

APPEAL from the circuit court of Lauderdale county. Hon. J. L. BUCKLEY, Judge.

Suit by E. B. Hawkins against J. T. Shields. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Wyatt & Easterling,* for appellant.

Under section 4001, Code of 1906 of Mississippi, the first defense—negligence or default of appellant, under proper conditions—would have been a good defense, but in case at bar, as appears from testimony of appellee himself, the notes which form the basis of this suit had been past due for more than two and one-half years before he endorsed or transferred them to appellant, and had never made an active effort to materialize on them, and appellant had them only a short time prior to the purchase of the first deed of trust testified about. Our court, when speaking on the liability of a surety, very forcibly said: ''We have examined with care every case cited by appellant's counsel in support of the principle contended for, and we presume that his research has collected all the cases upon it deemed favorable by him. There is not one of them, strictly in point; that is to say, there is not one of them where, in a contest between the creditor and the surety, it was held, in the absence of some special stipulation or circumstance requiring the creditor to proceed promptly on the collateral, that mere inaction as to the collateral would release the surety. Most of them were cases between the creditor and principal debtor, and in nearly all of them there had been some positive act of commission by the person whereby the value of the collateral had been impaired, or by his acts he had made it his own property. Where these features do not distinguish the cases, they are in states which do not adhere to the inflexible rules maintaining the liability of the surety and are to be found in our own and other states. The principles which pervade our decisions and which we think are certainly the soundest in view of our statutes, authorizing the surety, by notice, to compel the bringing of suit and by affidavit after judgment, to require the exhaustion of the principal debtor, may thus be stated:

The surety is in all respects equally bound with the principal for the payment of the debt, so far as the debtor is concerned. He can, therefore, never claim to be released without showing that he has been in some manner damaged by the act of the other; no mere laches on the part of the creditors short of a bar of the statutes of limitations.

The next defense undertaken by appellee is that the indorsement appearing thereon were not placed there at the time of their delivery to appellant and that appellant took them without recourse.

Section 4001, Code of 1906, under heading, "Promissory notes, other writings and the vendor's lien assignable; defenses," provides: "All promissory notes and other writings for the payment of money or other thing may be assigned by indorsement, whether the same be payable to order or assigns or not, and the assignee or indorsee may maintain such action thereon, in his own name as the assignor or indorsee could have maintained; and in all actions on such assigned promissory notes, bill of exchange, or other writing for the payment of money or other thing, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-off made, had or possessed against the same, previous to notice of assignment, in the same manner as though the suit had been brought by the payee; and the assignee or indorsee of any such instrument may maintain an action against the person who may have indorsed the same as in case of inland bills of exchange; but where any debt shall be lost by the negligence or default of an assignee, or indorsee, the assignor shall not be liable on the assignment or indorsement. The assignee of a claim for the purchase money of land may enforce the vendor's lien as the vendor could."

Appellee, however contends that he did not indorse the notes to appellant, but he admits that the signatures

appearing thereon are his and that appellant did not know that they had been previously put on there at a prior time for a different purpose, but admits, further, that he did transfer or record these very notes and deed of trust as is borne out by the following testimony of appellee. If that indorsement was placed on them prior to transaction with appellant and left on there and appellee did not advise appellant of that fact, even then appellee is liable unless fraud is pleaded. ''In the case of the blank indorsement, for the purpose of deposit of a check which is subsequently repudiated and returned, if the blank indorsement is negligently left upon the check and it is transferred to a *bona fide* holder, the latter may recover from the indorser who under such circumstances is estopped to set up fraud. *Turnbull* v. *Bowyer,* 40 N. Y. 456, affirming 2 Rob. (N. Y.) 411; *Alleman* v. *Wheeler,* 101 Ind. 141; *Burgess* v. *Northern Bank,* 4 Bush (Ky.) 600; *Cabot Bank* v. *Norton* (Mass.), 4 Gray 156; *Mosher* v. *Carpenter* (N. Y.), 13 Hun 603; *Turnbull* v. *Bowyer,* 2 Rob. 406, affirmed in 40 N. Y. 456, 100 Am. Dec. 523; *Herrick* v. *Whitney,* 15 Johns. Eng. 240; *Gurney* v. *Wornest,* 4 El. & Bl. 133; *Jones* v. *Ryder,* 5 Taunt. 488, and numerous other and different states.

*McBeath & Miller,* for appellee.

The sole question involved is whether or not appellant has a right to recover against appellee as an indorser under the facts of this case.

The undisputed testimony is, that some two years before the transaction between appellant and appellee, the appellee endorsed the Johnson notes in blank for the purpose of using them as collateral security for a loan obtained from the Peoples Savings Bank. When the loan was paid the endorsed notes were returned to appellee, who failed to erase said endorsement.

Appellee testified that he never endorsed the notes for the purpose of transferring them to appellant, and the

only requirement made by Hawkins was that he (Shields), was to make the transfer at the chancery clerks office on the deed of trust. On this the appellee rested his case and contented himself by submitting the cause to the jury on this one instruction.

"The court instructs the jury for the defendant Shields that, if they believe from the evidence that Shields did not endorse said notes for the purpose of transferring same to E. B. Hawkins, and that the only requirement of Hawkins from Shields was, that Shields was to make the transfer on the record of the deed of trust, then plaintiff cannot hold Shields on said endorsement, and the jury will find for the defendant Shields."

On this instruction the jury found for the defendant. We submit that there was no error in granting this instruction. If Mr. Hawkins who held a third deed of trust, purchased these notes which were secured by a second deed of trust for the reason as is stated by appellee in his cross-examination, page twenty, that is, "For the purpose of getting nearer to the first mortgage," then there was no intention on the part of either party to this transaction, to make appellee liable for any default of Johnson and his wife.

The truth of the matter is that the suing of appellee by appellant is simply an afterthought of appellant.

Appellant had a third deed of trust on the property and wanted to get the second out of his way as a matter of protection. Shields never endorsed these notes to Hawkins and we submit that the instruction of the trial judge given appellee, was not error and that this case should be affirmed.

McLean, J., delivered the opinion of the court.

W. B. Johnson and wife were indebted to one Bluett Lee, and in order to secure payment of this indebtedness, on December 24, 1904, executed a certain deed in trust upon certain real estate. Subsequently to this Johnson

and wife become indebted to J. T. Shields, and in order to secure the payment of this indebtedness also executed a certain deed in trust upon the same property, and at a still later date, being indebted to E. B. Hawkins, executed a third deed in trust conveying the same property. The indebtedness to Shields was evidenced by eight promissory notes, all of which were dated January 3, 1906. These notes were made payable to the order of J. T. Shields and were due at different dates; the first one being due on April 15, 1906, and the last one on December 15th of the same year. In January, 1907, Shields borrowed some money from the Citizens' Bank, and in order to secure the payment of this loan he indorsed, by writing his name across the back, the Johnson notes, and delivered them to the bank. Some time after that Shields paid his note to the bank, and the Johnson notes were surrendered to him. In August, 1909, Shields proposed to dispose of these notes to Hawkins. The matter was consummated, and Hawkins became the owner of the notes. Shields delivered the notes, with a written indorsement thereon. At the time of the purchase of these notes it was suggested by Hawkins that it would be necessary for the transfer of the notes to be marked on the record; and that this transfer would have to be acknowledged, and that it would cost something to have this done; but after advising with an attorney it was escertained that it was not necessary for an acknowledgment to the transfer to be made on the record. The real estate covered by the several mortgages was sold under the first trust deed, and Hawkins became the purchaser. The property did not bring enough money to pay the debts covered by the first and second trust deeds, and the result was that Hawkins demanded of Shields the balance that was due on the Johnson notes, transferred by Shields to Hawkins.

The defense set up by Shields was that at the date of the transfer Shields was not to be responsible as an

indorser of the notes. There is no evidence in the record to show that at the time of this transfer there was any understanding at all between Hawkins and Shields as to the latter's liability on the notes as indorser. Hawkins never said anything to Shields about being liable as indorser until after the property was sold under the trust deed, but shortly thereafter he made demand upon Shields for the difference. Shields' testimony on this point is as follows: . "There was no agreement between me and you that I was to become responsible. He says: 'I know it, but the place did not bring enough to pay the two notes; but, as your indorsement is on the notes, I will look to you for it.' I says: 'If I was legally or morally responsible to you, I would pay you; but I am neither legally or morally responsible for it. You did not ask me to indorse them to you, and for that reason I will not pay it, unless the law says so.' " Objection was made to the testimony of Shields, objection overruled, and exception taken.

The court gave the following instruction for the defendant: "The court instructs the jury for the defendant, Shields, that if they believe from the evidence that Shields did not indorse said notes for the purpose of transferring same to E. B. Hawkins, and that the only requirement of Hawkins from Shields was that Shields was to make the transfer on the record of the deed of trust, then plaintiff cannot hold Shields on said indorsement, and the jury will find for the defendant." And a verdict was returned for the defendant, and from the judgment entered thereon this appeal is prosecuted.

In the first place, it may be said there was no evidence at all, even if it were admissible, that the indorser, Shields, was not to be responsible in the event the makers failed to pay the notes. There was in truth and in . fact no agreement one way or the other about this matter. Evidently the conversation relating to having the record show a transfer of the notes was for the purpose

of complying with section 2794 of the Code of 1906, to the effect that "the assignor shall be required by the assignee to enter the fact of the assignment on the margin of the record of the lien, and in default of making such entry in satisfaction of the lien or instrument evidencing it, entered by the original creditor, shall release the same as to subsequent creditors and purchasers for value without notice," etc.; and under section 2795 of the Code it is provided that "all assignments of any indebtedness secured by a mortgage (etc.) shall be entered on the margin of the record of the lien within thirty days from the date of such assignment, and for a failure so to do the assignee shall forfeit to the debtor ten per cent of the amount of said indebtedness." We must conclude from the evidence in this case that the conversation had between Hawkins and Shields, as to letting the record show the assignment, was simply for the purpose of complying with the provisions of these two statutes.

The indorsement of a bill or note is not merely a transfer thereof; but it is a fresh and substantive contract, embodying all of the terms of the instrument in itself. The indorsement of a bill is equivalent to the drawing of a new bill by the indorser upon the drawee in favor of the indorsee; and the indorsement of a note is equivalent to the drawing of a bill upon the maker, who stands in the relation of acceptor, as it were, in favor of the indorsee. So entirely distinct and independent is the contract of an indorser of a note thereof and the maker that at common law a separate action against each was indispensable. The indorser engages that the bill or note will be accepted or paid, as the case may be, according to its purport; but this engagement is conditioned upon due presentment of demand and notice. It also engages that it is in every respect genuine, that it is the valid instrument it purports to be, that the ostensible parties are competent, and that he has the lawful title to it and

the right to indorse it. Such is the nature and effect of the contract of indorsement as shown by all of the authorities.

As between the indorser and indorsee there is no difference in the contract of indorsement, so far as the rights and liabilities of the indorser are concerned, when the indorsement is made before and when made after maturity; the only difference being that, when the indorsement is made before the maturity of the bill or note, the time of payment is fixed by the terms of the instrument itself, but when the indorsement is made after maturity, payment must be demanded of the payor within a reasonable time and notice, in the event of a refusal given to the indorser in order to charge him. In such an instance the instrument is regarded as being equivalent to one payable on demand. Daniel on Negotiable Instruments (5th Ed.), section 611, and authorities cited in notes; 7 Cyc. 822, *et seq.; Baskerville & Whitfield* v. *Harris,* 41 Miss. 535.

The great weight of authority is that, when the facts are few and simple, it is within the province of the court to determine what is reasonable time; but, when they are complicated and doubtful, they should be left for the ascertainment and judgment of the jury under proper instructions from the court. Further, that when the facts are ascertained it is for the court to determine what is reasonable time as a matter of law. Daniel on Negotiable Instruments, section 612; *Baskerville & Whitfield v. Harris,* 41 Miss. 535.

It is elementary that parol evidence is never admissible to contradict or vary the terms of a valid written instrument. While this general principle is admitted to be applicable to all contracts written out in full, some authorities are not willing to apply this principle to those contracts which are raised from implication by the operation of law, such, for instance, as indorsements in blank. Such seems to be the rule in Pennsylvania,

North Carolina, Florida, Colorado, and Connecticut; but this doctrine is certainly opposed to the great weight of authority, and also to the better reason. When it appears from an inspection of the paper that the party is an indorser, there seems to be no just ground for the distinction taken between the implied contract from his mere name thereon written and contracts written out *in extenso.* The signature of the indorser upon the bill or note is as marked a manifestation of the intention of the party as if the contract were set forth in express words. All of the authorities hold that, though there be nothing but the indorser's signature, the indorser's contract is as fully expressed as that of the drawer of the bill or maker of a note payable to bearer; and it is a general rule, supported by the great weight of authority, that the indorser in a suit brought by the indorsee, whether mediate or remote, cannot show by parol that it was agreed that the indorser should not be liable, and that his indorsement was without recourse on him. *Brown* v. *Spofford,* 95 U. S. 474, 24 L. Ed. 508; *Martin* v. *Cole,* 104 U. S. 30, 26 L. Ed. 647; Daniel on Negotiable Instruments, section 709; Tiedman on Commercial Paper, section 274. Indeed, this is no new question in this state, as has been so declared by this court. *Baskerville & Whitfield* v. *Harris,* 41 Miss. 530.

In denying the admissibility of parol evidence to vary or to contradict the terms of a contract of indorsement, we, of course, do not extend this rule, so as to exclude evidence offered to show want of failure of consideration, or in cases of irregular indorsement (*Thomas* v. *Jennings,* 5 Smedes & M. 627; *Polkinghorne* v. *Hendricks,* 61 Miss. 366; *Holmes* v. *Preston,* 70 Miss. 152, 12 South. 202; *Richardson* v. *Foster,* 73 Miss. 12, 18 South. 573, 55 Am. St. Rep. 481; *Pearl* v. *Cortright,* 81 Miss. 300, 33 South. 72), or to impeach the original or present indorsement on the ground of fraud, nor to exclude the parol evidence to the effect that the indorsement was

upon trust for some special purpose, as from a principal to an agent, or for collection merely, or as an escrow upon an express condition that has been complied with, and in cases of fraud, and perhaps in other instances.

The evidence in this case shows that the indorser wrote his name in blank across the back of the notes and delivered the same to a bank, when he hypothecated these notes as collateral security for an accommodation extended by the bank; that when he paid the bank its debts these notes were surrendered to the indorser, Shields; that the indorser did not erase his indorsement, but the same remained on the notes, and when subsequently, he made the contract with the appellant, Hawkins, he, the indorser, did not rewrite his name or reindorse the notes, but delivered the notes with the old indorsement thereon—it being a blank indorsement. It was not at all necessary to reindorse the notes. The delivery of the notes with the old indorsement thereon was an adoption of the former indorsement, and was equivalent to a new indorsement. No authority is needed for so obvious a proposition.

The instruction given for appellee was in direct conflict with this opinion, and the cause is reversed.

*Reversed.*