H. F. PIERCE v. M. J. CARLTON ET AL.

(Filed 11 October, 1922.)

1. **Bills and Notes — Notes — Negotiable Instruments—Fraud—Title—Acquisition by Original Payee—Holder in Due Course—Burden of Proof.**

Where the fraud of a payee of a negotiable note would render the instrument invalid originally in his hands, it will also render the instrument invalid in his hands when, with notice of and participating in the fraud, another has acquired the note by endorsement for value, and, in turn, has endorsed the same to the original payee for value; and the burden is upon the original payee in his action upon the note to show that he had acquired the title as a holder in due course, when the defendant has shown the infirmity in the instrument. C. S., 3039.

**2. Bills and Notes — Notes — Negotiable Instruments—Fraud—Title—Original Payee—Holder in Due Course.**

The payee of a negotiable instrument, that he has procured by fraud, may not acquire a valid title by afterwards acquiring the same from a bona fide holder in due course, who had no knowledge of the infirmity of the instrument.

**3. Appeal and Error—Verdicts—Issues.**

Where a verdict, interpreted by reference to the pleadings, the facts in evidence and the charge of the court, has given the appellant the full benefit of the positions he has insisted upon in the determination of the issue submitted, the refusal of the court to submit the issue in the precise terms as tendered by the appellant, will not be held for reversible error.

APPEAL by plaintiff from *Daniels, J.,* at November Term, 1921, of DUPLIN.

Civil action to recover the balance due on three promissory notes, executed by defendants, payable to Crawford & Ceas, of date 11 February, 1913, payable respectively, 1 June, 1914; 1 June, 1915; 1 June, 1916. There was evidence on part of plaintiff tending to show that these notes, each having entered thereon a credit of $100, and leaving aggregate amount due of $2,100. That on the afternoon of 11 February, the notes having been endorsed in blank by the payees, plaintiff bought said notes for $1,800, and without notice or knowledge of any infirmity affecting the validity of said notes. That thereafter, in February, 1913, plaintiff sold and delivered said notes to his brother, Thomas B. Pierce, cashier of a bank in Durham, for $2,100, said Pierce being also a purchaser for value without notice. And that in June, 1915, there having developed a dispute about the notes, plaintiff, not desiring to have his brother involved in any controversy concerning them, bought the notes back from his brother for $2,100, and same were endorsed to plaintiff without recourse, etc.

On the part of defendants there was allegation with evidence tending to show that said notes were procured by false and fraudulent representations on the part of the payees, and that plaintiff not only had full notice and knowledge of the fraud at the time he first acquired said notes, but that he had actually aided and abetted the payees in the fraudulent conduct and representations by which the note was procured.

On issues submitted the jury rendered the following verdict:

"1. Were the signatures to the notes sued on procured by fraud? Answer: 'Yes.'

"2. Did the plaintiff purchase said notes in good faith and without notice of infirmity or any defect and before maturity and for value? Answer: 'No.'

"3. Was Thomas B. Pierce the purchaser of said notes in good faith, and without notice of infirmity, or any defect, and before maturity, for value? Answer: 'Yes.'

"4. In what amount, if any, is the plaintiff entitled to recover of the defendants? Answer: ....................."

Judgment on the verdict for defendants, and plaintiff excepted and appealed, assigning for error chiefly the refusal to nonsuit for want of any evidence to show participation in the alleged fraud on part of plaintiff; and, second, the refusal to submit the issue, "Did H. F. Pierce, plaintiff, participate in any fraud, as alleged?"

*Stevens, Beasley & Stevens for plaintiff.*
*Grady & Graham and Rivers D. Johnson for defendants.*

HOKE, J.   Our statute on negotiable instruments, C. S., ch. 58, in sec. 3039, makes provision as follows:   *"When subject to original defenses.* In the hands of any holder other than a holder in due course a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

This principle that one who acquires title from a holder in due course may recover though he himself may have had notice of the infirmity when he acquired the instrument from such holder was recognized before the enactment of this statute.   In Calvert's Daniel on Negotiable Instruments, after stating the position that a purchaser with notice of the defect may acquire title from a holder in due course, the author says: "But this rule is subject to the single exception that if the note were invalid as between the maker and the payee, the payee could not himself, by purchase from a bona fide holder, become successor to his rights, it not being essential to such bona fide holder's protection to extend the principle so far."   Calvert's Daniel (6 ed.), sec. 805.

And the exception so stated is approved by the general current of authority.   *Andrews v. Robertson,* 111 Wis., 337; *Kost v. Bender,* 25 Mich., 515; *Arregon Coffee Co. v. Rodgers,* 105 Va., 51; *Hayes v. Kalashian, etc.,* 22 R. I., 101; Brannan's Negotiable Instrument Law, pp. 204 *et seq.*

In some of these decisions the principle is held to include one who reacquires the note as agent of the payee, or for his benefit, and also to one by whose influence and agency the note was fraudulently procured. *Battersbee v. Calkins,* 128 Mich., 569; *Wray v. Warner,* 111 Iowa, 64. It was the clear purpose and meaning of our statute, we think, to extend

the exception thus far, and to apply the principle not only to a payee who has procured the execution of a note by fraud and afterwards reacquires the same from a bona fide holder, to the agent who acts for such a payee in reacquisition of the instrument, or to one who aids and abets the payee in the fraud by which the instrument is procured.

There are also decisions which seem to hold that the exception referred to properly applies to one who, not being a party or participant in the fraud, has purchased such a note from the payee with knowledge or notice thereof, and reacquires the same from a bona fide holder. *Cline & Co. v. Templeton,* 78 Ky., 550; *Dollarhide v. Hopkins,* 72 Ill. App., 509.

There is doubt if our statute permits an interpretation which would apply to the facts presented in these last cases. The more natural meaning of the language used would apply the exception to the payee or other taking part in the fraud or illegality which rendered the instrument invalid. We are confirmed in this estimate by perusal of an article by Professor Brannan appearing in 26th Harvard Law Review on certain suggested amendments to the negotiable instrument law, pp. 493-502. In that article the learned writer himself expressed the doubt we have advanced as to the meaning of the present statute, and suggests an amendment to the law by which the uncertainty may be removed. On the facts of the present record, we are not called on to make definite decision on this question for the reason that his Honor, in submitting the second issue, that as to present plaintiff's ownership in good faith of the notes, instructed the jury that if present plaintiff held the notes by endorsement for value from a bona fide holder, he was entitled to their verdict on the issue, unless defendants had satisfied them by the greater weight of the evidence that plaintiff was a "participant in the fraudulent conduct by which the notes were secured."

It is the recognized principle in this jurisdiction, that a verdict may be given significance and correctly interpreted by reference to the pleadings, the facts in evidence, and the charge of the court. And the plaintiff having received the full benefit of the position, insisted on by him in the determination of the issue submitted, the refusal of the court to submit the question in the precise terms of the issue as tendered may not in any event be held for reversible error. *Kannan v. Assad,* 182 N. C., 77; *Reynolds v. Express Co.,* 172 N. C., 487.

We do not consider it necessary or desirable to refer in detail to the testimony tending to establish fraud in the procurement of the notes and plaintiff's participation therein, but will only say that we have carefully examined the record, and the facts in evidence are fully sufficient to require that the issues be submitted to the jury, and that plaintiff's motion to nonsuit was properly overruled.

No error.