McD. RAY v. JOHN G. P. LIVINGSTON.

(Filed 25 January, 1933.)

1. **Bills and Notes C d—Purchaser from payee after negotiation of instrument back to payee may not hold intermediate endorser liable.**

C. S., 3047, providing that an endorser of a negotiable note warrants to all subsequent holders in due course that the instrument is genuine, that he has good title, that all prior parties had capacity to contract, and that the instrument at the time of his endorsement is valid and subsisting, must be construed with the other sections of the Negotiable Instrument Act relating to the liability of endorsers, C. S., 3031, 3039, 3049, and, under the provisions of these sections, where the instrument is negotiated back to the payee the payee cannot hold the intermediate endorsers liable, nor can a purchaser from the payee after reissuance of the note by the payee hold such endorsers liable.

2. **Same—Endorser subsequent to endorsement by payee held not liable to purchaser from payee after note had been negotiated back to payee.**

Where all the names on a negotiable instrument are forged except the endorsement of the payee and the name of an endorser subsequent to the payee's endorsement, and the note is negotiated back to the payee who sells it to a bona fide purchaser for value: *Held*, the bona fide purchaser for value from the payee upon the reissuance of the note may not hold the endorser whose signature was genuine liable, such endorser being an intermediate endorser between the payee's original endorsement and the payee's subsequent possession of the note and transfer to the purchaser.

1—204

**3. Same—Posession of note by prior party raises presumption of ownership and that note was negotiated back to him.**

The possession of a negotiable instrument raises a presumption of ownership, and where a prior party obtains possession of a note for the second time and sells it by reissuance to a purchaser, it will be presumed that the prior party obtained the note by negotiation back to him by endorsement in blank when his name does not appear on the note the second time, and the purchaser from him is charged with notice thereof.

APPEAL by plaintiff from *Schenck, J.,* at May Term, 1932, of HENDERSON. Affirmed.

The plaintiff brought suit to recover of the defendant as an endorser the amount alleged to be due on the following note:

"$450.00.                    Hendersonville, N. C., 14 December, 1929.

Six months after date, without grace, we promise to pay to T. A. Steel, or order, four hundred fifty and No/100 dollars. For value received. Payable at the office of the First Bank and Trust Company, Hendersonville, N. C., with interest after date. Protest, presentment and notice of dishonor or extension waived by all parties to this note.

Mrs. T. A. Steele.    (Seal.)<br>
C. W. Gilbert.    (Seal.)<br>
Nora M. Steele.    (Seal.)

Endorsements on said note: T. A. Steele, Jno. G. P. Livingston, J. M. Gilbert, Robt. A. Steele, O. H. Steele, and H. R. Steele."

The parties waived a trial by jury and submitted the case on the following agreed statement of facts:

1. That the plaintiff, McD. Ray, became the holder of the note sued on, which is attached hereto and made a part of this agreed statement of facts before maturity, and without notice that it had been previously dishonored; and in fact, it had not been previously dishonored; that said plaintiff took said note in good faith and for value; that at the time it was negotiated to said plaintiff, he had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it.

2. That the names of all the makers were forged and that the names of all endorsers, who endorsed said note after the defendant, John F. P. Livingston, endorsed were forged.

3. That the name of T. A. Steele and John G. P. Livingston, the first two endorsers on said note, were not forgeries, but are the genuine signatures of the said Steele and Livingston.

4. That the endorser, T. A. Steele, sold and negotiated said note to the plaintiff, McD. Ray.

5. That the defendant, when he endorsed said note, did not know that any of the names to the note were forgeries, and that the plaintiff in purchasing said note did not know that any of said names were forged.

His Honor adjudged that the plaintiff is not entitled to recover of the defendant Livingston. The plaintiff excepted and appealed.

*Redden & Redden and C. D. Weeks for plaintiff.*
*Mack P. Spears for defendant.*

ADAMS, J. All the signatures on the note were forged except those of the defendant and T. A. Steele, the payee. It is fundamental that a forged signature creates no obligation. Steele is not a party to the action. The only question is whether the defendant is liable to the plaintiff.

In asserting the liability of the defendant the plaintiff relies chiefly on the provisions of section 3047 of the Consolidated Statutes and on the legal principle enunciated in *Bank v. Crafton,* 181 N. C., 404. In that case the Court held that a "contract of endorsement is a substantive contract, separable and independent of the instrument on which it appears, and where it has been made without qualification and for value it guarantees to a holder in due course among other things that the instrument, at the time of the endorsement is a valid and subsisting obligation." The opinion was based on these facts: Carver had given his promissory note to Crafton, the defendant, for money which the defendant, who was the payee, had won in a game of cards, and Crafton had endorsed the note to W. E. Shuford for whom the bank had discounted it without notice that it had been given for a gambling debt. The note was void because executed in consideration of a gaming contract. C. S., 2142. Upon these facts the Court held, according to the principle stated, that the plaintiff could recover of the defendant.

It is essential that we keep in mind the distinction between the facts in the case just cited and those in the case at bar. In the former, the bank derived its title to the note from Shuford, the last endorser, and had the right at its election to bring suit against him or any prior endorser. C. S., 458; *Lilly v. Baker,* 88 N. C., 151; *Bank v. Carr,* 121 N. C., 113; *Bank v. Lumber Co.,* 123 N. C., 24; *Bank v. Carr,* 130 N. C., 479. In the present case Steele, the payee, sold and negotiated the note to the plaintiff, and the plaintiff instead of suing Steele, sued the defendant who was a subsequent endorser. It is our purpose presently to point out the legal effect of this procedure.

Meantime let us advert to section 3047, which is cited by the plaintiff. It provides that every endorser who endorses without qualification warrants to all subsequent holders in due course (1) that the instrument is

genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; and (4) that the instrument is at the time of his endorsement valid and subsisting.

This section, which restricts the warranty to *subsequent* holders in due course, must be considered in connection with other sections of the Negotiable Instruments Law. Section 3039 is in these words: "In the hands of any holder other than a holder in due course a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course and who is not himself a party to any fraud or illegality affecting the instrument has all the rights of such former holder in respect of all parties prior to the latter."

In *Pierce v. Carlton,* 184 N. C., 175, *Hoke, J.,* in his elucidation of this statute approved the following quotation from Daniels on Negotiable Instruments (6 ed. by Calvert), sec. 805: "But this rule is subject to the single exception that if the note were invalid as between the maker and the payee, the payee could not himself, by purchase from a bona fide holder, become successor to his rights, it not being essential to such bona fide holder's protection to extend the principle so far." If, therefore, the defendant Livingston acquired title to the note as a holder in due course and Steele, while not a holder in due course, derived his title through the defendant he would not succeed to the rights of the former holder, because by reason of the forgery the note was invalid as between the alleged makers and the payee.

We now turn to section 3031: "Where an instrument is negotiated back to a prior party, such party may, subject to the provisions of this chapter, reissue and further negotiate the same. But he is not entitled to enforce payment thereof against any intervening party to whom he was personally liable."

The word "endorsement" usually means the "writing of one's name on an instrument with intent to incur the liability of a party who warrants payment of the instrument, provided it is duly presented to the principal at maturity, not paid by him, and such fact is duly notified to the endorser." 1 Daniel, Neg. Ins. (6 ed. by Calvert), sec. 666. As respects one another, endorsers are liable prima facie in the order in which they endorse—in the absence of contract each being liable only to those who subsequently endorse the paper. C. S., 3049; *Hill v. Shields,* 81 N. C., 250; *Lancaster v. Stanfield,* 191 N. C., 340. As a rule no prior endorser has a cause of action against a subsequent endorser. One who obtains possession of a note or bill after endorsing it is restored to his original position and cannot hold intermediate parties; and one who

acquires possession of the instrument from such person, with notice of the fact, cannot hold the intermediate endorser. *Adrian v. McCaskill,* 103 N. C., 182.

The facts in regard to the payee's endorsement and his subsequent possession of the note are not stated; but an endorsement in blank presumes an intent to transfer the endorser's title. *Adrian v. McCaskill, supra.*

Under what circumstances Steel acquired possession of the note after his endorsement does not appear, but his possession raised a presumption of his ownership. We are therefore justified in assuming upon the agreed facts that Steele transferred his title to the defendant who afterwards negotiated the note back to the payee, the latter according to the signatures of the endorsers being a prior party. The plaintiff was affected with notice of the fact. Steele cannot hold the defendant liable; the plaintiff succeeded to Steele's title. and therefore has no cause of action against the defendant. The judgment is

Affirmed.