# Coral Gables, Inc., v. Barnes.

(Decided Feb. 7, 1933.)

EUGENE R. ATTKISSON for appellant.

HUBBARD & HUBBARD and JAMES W. GARRISON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On July 14, 1927, Ida W. Barnes purchased from the Coral Gables Corporation two Florida lots, and

executed therefor two promissory notes, each payable in monthly installments, one for $1,804.80, and the other for $3,000. Shortly thereafter the two notes were transferred to the Miami Mortgage & Securities Corporation, which in turn assigned them to the Biscayne Trust Company, trustee, to secure an issue of bonds. In the month of February, 1929, the Biscayne Trust Company assigned the notes to Coral Gables, Inc.

This action was brought by Coral Gables, Inc., to recover on the notes. The defense was that the purchase contracts and the notes were obtained by fraud. A trial before a jury resulted in a verdict and judgment for the payor. The Coral Gables, Inc., appeals.

According to Miss Barnes she had previously purchased two lots from the Coral Gables Corporation, one while she was in Florida, and the other through correspondence. Before making these purchases she was assured by representatives of the vendor that they were going to make a magic city of Coral Gables; that they were going to build a university costing $15,000,000, 40 miles of waterway and yacht basin, a rapid transit railway, a Shrine temple, several golf courses and tennis courts, and make numerous other improvements; that they had the finances to carry out the improvements, and the development would go on if they did not sell another lot for five years. They also agreed to build streets and sidewalks, but none of them were built at their expense. She made several payments on the lots, but stopped when she reecived a letter from Mr. True, who was connected with the Coral Gables Corporation, informing her that the contract on the part of the Coral Gables Corporation was not being carried out. She immediately informed the corporation of Mr. True's letter. In reply she received a letter from a representative of the corporation telling her that Mr. True had misrepresented the conditions, and had been called to account by the corporation. Later on she had a letter from the president of the corporation assuring her that what Mr. Strausz said could be relied on, and that Mr. True's statement in regard to the corporation was false. Miss Barnes then demanded that the contracts and notes be canceled, and that the payments she had made be returned to her. Following some correspondence on the subject, another representative of the corporation was sent to Louisville. He told her that there

were two other lots more desirable, and proposed to substitute these lots for the ones she had previously bought. At the same time he assured her that Coral Gables was not broke, but was able and intended to carry out all the improvements, and had the money to do it with. He also represented that one of the substituted lots was worth $7,500 and the other $3,900, and that both could be sold at that price in 90 days. There was further evidence that the lots at that time were not worth more than $500 each; that at the time the notes were executed the Coral Gables Corporation was insolvent, and unable to carry out the contemplated improvements. In addition to this, the contract for the deeds provided that, where not already completed, streets would be paved, sidewalks constructed, water mains and electric feed wires installed, without additional costs to the purchaser; whereas, the streets and sidewalks were paid for out of the proceeds of bonds issued by the city of Coral Gables, and secured by special assessments on the abutting lots, including those involved in this case. There was also evidence that though there was electric light on the lots in question, the water system had not been completed.

It is first insisted that appellant was entitled to a peremptory instruction on the ground that no fraud was shown, that the second contract operated as a novation, and that appellant was an innocent purchaser for value.

1. In support of the first proposition it is argued that the alleged misrepresentations were not of the character to justify a rescission of the contract, and Livermore v. Middlesborough Town-Lands Co., 106 Ky. 140, 50 S. W. 6, 20 Ky. Law Rep. 1704, and kindred cases are relied on. In those cases the court announced the rule that in order to establish fraud against which equity will relieve, it must appear that the misrepresentation was a material fact (as distinguished from opinion) at the time or previously existing, and not a mere promise for the future, and it was held that as the promoters merely painted a glowing picture of the future prospects of the town of Middlesborough, and did not make any misrepresentations as to any material existing fact, the purchasers of lots failed to make out a case of fraud entitling them to a rescission of their contracts. In the case at bar the Coral Gables Cor-

poration not only promised to make numerous improvements, many of which were not made, but represented that it had the money with which to make the improvements. If untrue, and the evidence so shows, this was a false representation of a material existing fact, and therefore such as to authorize a rescission of the contracts.

2. On the question of novation it is argued that appellee, after being informed that the corporation was unable to carry out its contracts, rescinded her former contracts and purchased two new lots, which operated as a complete settlement of all matters in dispute and precludes her from insisting that any of the contracts were obtained by fraud. There might be some merit in this contention if appellee had had actual knowledge of the corporation's financial condition, and no further misrepresentations had been made at the time of the last purchase; but that is not the case. Not only was she advised by the highest officer of the corporation that the statements theretofore made to her by another officer that the corporation was unable to carry out its contracts were untrue, but the agent through whom the last purchase was made quieted her fears by telling her to forget all about Coral Gables being broke, and assuring her that they were going forward with the improvements and had the necessary money. It is at once apparent that the facts bring the case within the rule that the substitution of a new contract for an old one will not result in a novation where the new contract is obtained by fraud. Kincaid v. Yates, 63 Mo. 45; In re Tagliabue's Estate, 123 Misc. 666, 206 N. Y. S. 222.

3. But perhaps the point most seriously pressed is that the court should have held as a matter of law that appellant is a holder in due course. The argument is that appellant, an independent corporation, acquired title to the notes through the Miami Mortgage & Securities Corporation and the Biscayne Trust Company, both of whom were bona fide purchasers for value without notice. It may be doubted if the evidence was sufficient to show that either the Miami Mortgage & Securities Corporation or the Biscayne Trust Company was a holder in due course. But conceding that such was the case, it does not necessarily follow that appellant is an innocent holder in the circumstances here presented. It is the rule in this state that a payee who

repurchases a note occupies the same position as if it had never been negotiated and the note is subject to all the defenses existing between the original parties. Sweeney v. Taylor's Ex'r, 205 Ky. 390, 266 S. W. 665. Appellant insists that this rule is not applicable, as it is not the original payee, but a separate and independent corporation. The facts disclosed by the record are these: The Coral Gables Corporation was about to go into bankruptcy. Coral Gables, Inc., was organized for the purpose of taking over its assets and liquidating them for the benefit of creditors. No new money was put into the new corporation, and the principal officers and agents of the two corporations were the same. Debenture stock was issued to the secured creditors, and common stock to a holding company for the benefit of unsecured creditors. Any surplus after the payment of creditors was to go to the stockholders of the Coral Gables Corporation. As no new money was put into the new corporation, and its only stockholders were the creditors of the old corporation, it is apparent that the new corporation, though organized under a different name, was merely the liquidating agent of the old corporation. That being true, the situation is the same as if the old corporation had made an assignment for the benefit of creditors, in which event neither the assignee nor the creditors represented by him would have occupied the position of innocent purchasers for value. Walker v. Walker, 41 S. W. 315, 19 Ky. Law Rep. 626; Bank of Commerce v. Payne, 86 Ky. 446, 8 S. W. 856, 10 Ky. Law Rep. 43; Clements v. Berry, 11 How. 398, 13 L. Ed. 745. Therefore, we are constrained to hold that the legal effect of the transfer of the notes in question to appellant was the same as if they had been transferred to the Coral Gables Corporation, with the result that the defense of fraud is available, even though appellant acquired title from two prior holders in due course.

4. The principal ground of attack on the given instruction is that the court should have directed a verdict in favor of appellant, a contention which cannot be sustained. The court did not err in assuming the existence of certain facts as to which there was no contradiction in the evidence, and it may be doubted if in other respects the instruction was as favorable to appellee as it should have been.

On the whole we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.