# Denniston's Adm'r et al. v. Jackson et al.

March 14, 1947.

Chester D. Adams, Judge.

J. Nathan Elliott and Elliott & Elliott for appellants.

Troy D. Savage, J. Owen Reynolds, E. L. Hutchinson and James Park for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part, reversing in part.

Kendall K. Denniston, payee in a note for $3,276.90, transferred it for value before maturity to the J. T. Jackson Lumber Company, a partnership, in satisfaction of an obligation he owed them. The note then bore the following endorsements:

"Pay to the order of J. D. Purcell,
Kendall K. Denniston."

"Pay to the order of Kendall K. Denniston,
J. D. Purcell."

"Pay to the order of J. T. Jackson
Lumber Company,
Kendall K. Denniston."

The Lumber Company recovered judgment against the endorsers, Denniston and Purcell. The makers of the note were not sued. Several defenses were made.

The question we now consider is whether the Jackson Company, holders of the instrument, may recover of Purcell, the intermediate endorser. It is of interest, but not of importance here, that Denniston had endorsed the note to Purcell as a pledge to secure him as surety on Denniston's note to a bank, and when it had been satisfied Purcell endorsed this note back to Denniston; but the Jackson Company had no notice of this. They only saw that Purcell was an endorser.

The obscurity of the Negotiable Instruments Law, KRS 356.001 et seq., as to the liability of an intermediate endorser where the payee or other prior party has reacquired a note has provoked discussion among scholars in the law and given rise to diversity of opinions of the courts, although the cases are few.

Section 50, Ky. Rev. Stats. 356.050, reads: "Where an instrument is negotiated back to a prior party, such party may, subject to the provisions of this chapter, reissue and further negotiate the same; but he is not entitled to enforce payment thereof against any intervening party to whom he was personally liable."

Section 58, KRS 356.058, provides that in the hands of a holder not in due course a negotiable instrument is subject to the same defenses as if it were non-negotiable, and adds: "But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

The diversity of interpretation rests on different theories. One is that when a prior party who endorsed

the instrument re-acquires it, he should be regarded as but getting his former title back, or, using a simile, as standing in his old shoes, so that he cannot hold a subsequent endorser liable. The other theory is that he should be regarded as a new purchaser or as acquiring a new title derived from him from whom he obtains it, or as taking a fresh start in new shoes. Under the first theory an intermediate endorser drops out of the line even though he does not strike out his endorsement (Sec. 121, N. I. L., KRS 356.121). Under the other, he is a prior endorser of the one who re-acquires the instrument. Chaffee, The Re-Acquisition of Negotiable Instruments by a Prior Party. 21 Columbia Law Review, 538; Brannan, Some Necessary Amendments of the Negotiable Instruments Law, 26 Harvard Law Review, 493, 502. These academic discussions seem to deal with a course of negotiation touched by fraud somewhere along the line. Illustrative cases are given in which injustice to an innocent endorser might result under either theory.

We examine the cases, in all of which the facts are similar to those we have before us.

In a case decided under the law merchant, West Boston Savings Bank v. Thompson, 124 Mass. 506, Jones, the payee, endorsed a note and assigned a mortgage securing it to Thompson as security for a loan. When it was paid, on Jones' request, Thompson endorsed the note and assigned the mortgage to Pickering and Moseley. When Jones paid Pickering and Moseley they re-assigned the note and mortgage to him by a separate instrument. Then Jones endorsed the papers and assigned them to the Bank, which sued Thompson, the intermediate endorser. It was held that by the familiar processes governing the circulation of negotiable paper, the Bank was entitled to recover against all the parties to the note at the time it was negotiated, which included Thompson. Said the court: "It was not necessary for the defendant to endorse the note; but, as he saw fit to put it in circulation with his endorsement, he became liable on it to any one who took it in good faith and for value before its maturity. It will hardly be seriously contended that his testimony that he 'did not intend to endorse it' would affect the rights of a holder for value."

The case was followed in State Finance Corporation v. Pistorino, 245 Mass. 402, 139 N. E. 653, decided under the Negotiable Instruments Law.

Under a similar state of facts, and citing the Massachusetts cases as authority, it was held in Persky v. Bank of America National. Association, 235 App. Div. 146, 256 N. Y. S. 572, that an intermediate endorser was liable to a subsequent bona fide purchaser. But on appeal that judgment was reversed on the ground that the instrument was not negotiable at all, so that the assignee took title subject to a certain available defense against the assignor. The Court of Appeals, therefore, deemed the question of liability of an intervening endorser under the Negotiable Instruments Law to be "irrelevant and academic," hence expressly withheld an opinion on it. Persky v. Bank of America, 261 N. Y. 212, 185 N. E. 77, 79. Therefore, the force of the decision of the Appellate Division of the New York court (an intermediate one) was considerably weakened, if not wholly destroyed.

On the other side, supporting the "old shoes" theory or of restoration to his original position, it is said in 8 Am. Jur., Bills and Notes, Section 451, that a prior party to whom an instrument has been negotiated back may re-issue or re-negotiate it, but he is not entitled to enforce payment thereof against any intervening party to whom he is personally liable (which is according to Section 50, N. I. L.), and upon authority of Adrian v. McCaskill, 103 N. C. 182, 9 S. E. 284, 3 L. R. A. 759, 14 Am. St. Rep. 788, it is added: "Furthermore, one who derives possession from such a prior party, with notice of this fact, cannot hold intermediate endorsers liable." The facts in the Adrian case are like those in the instant case in their essential particulars, except that the payee only endorsed the note in the beginning and above the defendant's endorsement and did not again sign below them when he delivered the note to the plaintiffs. The difference does not seem material for the delivery of the note was the adoption of the former endorsement and the equivalent to a new endorsement. Brannan, Neg. Instr. Law, Sec. 58, p. 716; KRS 356.049; Lawyers' Realty Co. v. Bank of Ludlow, 256 Ky. 675, 76 S. W. 2d 920; Hawkins v. Shields, 100 Miss. 739, 57 So. 4, 4 A. L. R. 760. Also, the endorsements were in

blank, and not special as here, but neither does that seem to be material. 8 Am. Jur., Bills and Notes, Sec. 322. The court reasoned (103 N. C. 182, 9 S. E. 285): "When the note was returned to Patterson, (payee), he became again the owner, and, as between him and any subsequent endorsers, the relation of endorser and endorsee ceased. The plaintiffs were not the endorsers of the defendants. [It is clear that] Patterson could not, by reason of the blank endorsement of McCaskill & McLean, [intermediate endorsers], hold them liable for the note, for he stood in the relation to them of a prior endorser. The plaintiffs derive their title directly from Patterson, the original payee, who had reacquired the title, and not as successive endorsers deriving title through the endorsement of the defendants * * *. The plaintiffs were affected with and bound by notice of what appeared upon the note itself, and they took the note from the original payee, bearing upon its face the fact that he was the first endorser, and that the defendants were his endorsers."

The case was decided under the law merchant, but that does not seem to be materially different from the Negotiable Instruments Law in this respect. As in Massachusetts, the North Carolina court later recognized the Adrian case as authority for the same conclusion under the Negotiable Instruments Law. Ray v. Livingston, 204 N. C. 1, 167 S. E. 496, 498. There every signature on a note was a forgery except that of the payee and his next succeeding endorser, Livingston. It bore several subsequent forged endorsements and was transferred by the payee to the plaintiffs, who were bona fide holders for value. They sued the one endorser whose signature was genuine. Citing the Adrian case, the court said: "As a rule, no prior endorser has a cause of action against a subsequent endorser. One who obtains possession of a note or bill after endorsing it is restored to his original position, and cannot hold intermediate parties; and one who acquires possession of the instrument from such person, with notice of the fact, cannot hold the intermediate endorser."

See also 10 C. J. S., Bills and Notes, sec. 222, p. 715; Steinberger v. Hittelman, 93 Misc. 105, 156 N. Y. S. 320.

Professor Brannan (author of the standard author-

ity, Brannan's Negotiable Instruments Law) in a monograph, In Some Necessary Amendments to the Negotiable Instruments Law, 26 Harvard Law Review, 493, 502, argues for this construction of the Law, although he suggests that Section 58 should be amended to read: "But a holder who derives his title through a holder in due course and who is not himself a party to any fraud or illegality affecting the instrument or had previously been a holder with notice and subject to the defense of such fraud or illegality, has all the rights of such holder in due course in respect of all parties liable to the latter except intervening endorsers."

In support of his proposal, the learned writer said: "It is perfectly well settled that where the holder of a negotiable instrument has transferred it and subsequently re-acquired it, he is remitted to his old position just as if everything which had taken place since his transfer had been wiped out. In consequence of this rule, it follows that when such former holder was subject to any defense in favor of parties prior to himself, he cannot better his position by transferring the instrument and re-acquiring it from a holder in due course. Otherwise he would be able to take advantage of his own wrong in transferring the instrument. There are numerous cases, and so far as has been ascertained, no dissent from the position that the payee of an instrument which he has procured by fraud or upon an illegal consideration, cannot claim any rights under a re-acquirement of it from a holder in due course."

In the Sixth Edition of Brannan's Negotiable Instruments Law, the reviser, Beutel, takes the position, page 714, that the phrase, "except intervening endorsers," is not necessary, and suggests that Professor Brannan had apparently overlooked Section 50, N. I. L., which provides that upon re-acquisition by a prior party he acquires no rights against intervening parties to whom he is liable, adding, "It also seems to follow that he would acquire no rights from them." In the case at bar we do not have any bad faith or fraud in any of the transactions, and the plaintiff, the Jackson Company, was a holder in due course from the payee who had re-acquired the note.

In Sweeney v. Taylor's Executor, 205 Ky. 390, 266

S. W. 665, the question was whether a note having been once placed upon the footing of a foreign bill of exchange and is re-acquired by the payee after maturity and subsequently transferred to another, retains that classification, or if it loses the attributes of negotiability, with the equities arising in favor of a holder in due course. We held (citing Casner v. Schwartz, 198 Mo. App. 236, 201 S. W. 592) that where the payee has repurchased a note it assumes the same position as if it had never been negotiated and is subject to all the defenses existing between the original parties. We re-affirmed that rule in Coral Gables v. Barnes, 247 Ky. 292, 57 S. W. 2d 18. In this jurisdiction (differing from the majority) it has always been held, both before and since the enactment of the Negotiable Instruments Law, that when a maker of a note acquires it by assignment or endorsement, the obligation is extinguished and cannot be revived. Long v. Bank of Cynthiana, 11 Ky. 290, 13 Am. Dec. 234; Conley v. Louisa Nat. Bank, 296 Ky. 797, 178 S. W. 2d 17. These cases are not directly in point, but the influence of the conclusions has effect upon our present consideration.

We conclude that the better theory is that of the clean slate, or a fresh start, when a note finds its way back into the hands of the payee, and that a subsequent holder had no greater right than he from whom the instrument is acquired; that an endorser, intermediate of the first and second endorsement by the payee or another, cannot be regarded as in the line through which the holder can trace his title. We are of opinion therefore that the judgment is erroneous in holding Purcell's personal representative liable on the note, he having died after the suit was filed.

We come to the case against Denniston. It is contended in behalf of both appellants that the Jackson Lumber Company were not holders in due course, for there was no consideration for the transfer by Purcell to Denniston, nor from him to the plaintiffs, and the circumstances put the company on such notice that they cannot be regarded as having taken the note in good faith for value. We need not consider these points in relation to Purcell's liability.

The facts are that Denniston and wife owed the

Lumber Company a past due note for $2,500, secured by a second mortgage on property in Lexington. At the time of this transaction the property was worth no more than the first mortgage, and Denniston and wife were insolvent. In consideration of the surrender of the mortgage the Lumber Company accepted the note sued on. It was for $3,256.90 and secured by a second mortgage on property near Bedford, Indiana. That security likewise was of no value. In short, it now appears that the trade was nothing for nothing. But Denniston was a young man and not a bankrupt. The future might have developed the note to have full value.

Another claim of absence of consideration is that prior to the endorsement and delivery of the note Denniston had executed and delivered an assignment of the Indiana mortgage. It was taken to Indiana and an investigation of the value made by a representative of the Lumber Company, who then lodged the assignment for record. It appears that the note was endorsed by the Company upon the return of the representative to Lexington, although that is not certain. Reliance is had on the proposition that where an endorsement is made for the sole purpose of passing legal title to the paper to another person who is the real or beneficial owner, the consideration is not sufficient to impose an endorser's liability, unless some new consideration is furnished on account of the endorsement. 10 C. J. S., Bills and Notes, sec. 161, p. 638. In the first place the assignment of the mortgage expressly assigned the indebtedness secured by it, but of more importance is the fact that there was but one transaction and both Denniston's endorsement of the note and his separate assignment of the mortgage must be regarded as having been made at the same time.

There are some other points made by the appellants seeking escape from liability, but so far as Denniston is concerned we find no merit in them.

During the pendency of this action in the circuit court, Denniston, Purcell and the senior partner in the Jackson Lumber Company died. The case was revived in the names of their respective personal representatives and the judgment rendered accordingly.

The judgment is reversed as to Purcell's estate and affirmed as to Denniston's administrator.